Ryan J. Cann, Esq.
Nevada Bar No. 11073
CANN IP LAW PLLC
1 East Liberty Street, Suite 600
Reno, Nevada 89501
775-234-3796  Telephone
info@canniplaw.com   Email
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEI FEI FAN,<br><br>             Plaintiff,<br>vs.<br><br>YAN YAO JIANG and WEI WU,<br><br>             Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

      Plaintiff FEI FEI FAN ("Fan") by and through her undersigned attorney, hereby alleges as follows:

**NATURE OF THE ACTION**

      1.    In 2005, Defendant Yan Yao Jiang ("Jiang") was tenured Associate Professor and Graduate Program Director in the Mechanical Engineering (ME) Department at the University of Nevada, Reno (UNR). Jiang met Wei Wu ("Wu")'s friend, who was Fan's undergraduate thesis advisor at Shanghai Jiao Tong University in China. Jiang decided to recruit Fan from China to the U.S.

      2.    In 2006, Fan came to the U.S. alone and studied under Jiang's direction for her Master's degree. Fan worked for Jiang as a student employee on an F1 student visa.

      3.    Jiang forced Fan to enter into a sexual relationship, when he was 42, married, and she was 23, single.

4. From 2006 to 2008, Jiang had intense and complete power over Fan's visa, degree, and stipend. Jiang abused his power and authority as Fan's Master Thesis Committee Chair and direct advisor. Jiang raped and abused Fan sexually and emotionally, in work time and at workplace. Jiang paid Fan a stipend using his federal research grants via UNR. Jiang required Fan to perform academically irrelevant labor for Jiang's own purposes.

5. In 2015, Fan became tenure-track Assistant Professor in ME Department at UNR under an F1 student visa, later an H1 international worker visa until 2020 May. Jiang served as Fan's academic mentor and on Fan's Tenure Committee.

6. From 2015 to 2019, Jiang sexually exploited and emotionally abused Fan using Jiang's power over Fan's evaluation and tenure.

7. From 2020 May to September, Jiang and Wu threatened Fan with potential physical harm and threatened Fan to ruin Fan's life by ruining her reputation and career in academia if Fan reported Jiang's sexual misconduct.

8. From 2020 August, Jiang started to spread false and defamatory statements against Fan at workplace. These statements falsely indicated that Fan committed crimes and Fan was proactive in sexual misconduct. These actions included filing for an application for protection against Fan in the Reno Justice Court in February 2021 that included falsehoods and misrepresentations of fact intended to humiliate Fan and make Fan's life more difficult. Jiang actively ruined Fan's professional reputation and plagued Fan's career.

9. Plaintiff brings this civil action under the federal Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1589, 1590, 1591, and 1595; the Involuntary Servitude statutes under Nevada law, NRS §200.463; the torts of Intentional Infliction of Emotional Distress; Defamation, and Trespassing. Plaintiff seeks redress for Defendants' willful and wonton sexual, emotional, and professional abuse.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter as to claims arising under federal law based on 28 U.S.C. § 1331. This Court further has jurisdiction over the sex and labor trafficking claims pursuant to 18 U.S.C. § 1589 *et seq*.

11. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367. Supplemental jurisdiction over those claims exists because they arise from the same common nucleus of operative facts from which the federal claims arise.

12. The Court further has jurisdiction pursuant to 28 U.S.C. § 1332 because the value of this case exceeds $75,000.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because Plaintiff and Defendants reside in this district, and a substantial part of the events giving rise to these claims occurred in this district.

## PARTIES

**A. Defendants Yan Yao Jiang and Wei Wu**

14. Defendant Yan Yao Jiang, 57 and married, is a U.S. citizen and Professor in the ME Department at UNR. Jiang started to work at UNR in 1996 and was promoted to tenured Associate Professor in 2002 and to Professor in 2007. Jiang is currently residing in Nevada.

15. Defendant Wei Wu, 52 and married, is Jiang's wife and a U.S. citizen. Wu is currently residing in Nevada.

16. Jiang and Wu started a romantic relationship when Wu was Jiang's undergraduate student and was in Jiang's class in 1989 at the Zhejiang University of Technology, China, where Jiang taught as Lecturer.

17. Jiang served as Fan's academic mentor and on Fan's Tenure Committee at UNR.

**B. Plaintiff Fei Fei Fan**

18. Plaintiff Fei Fei Fan, 38 and single, is a Chinese citizen. Fan became a U.S. permanent resident in 2020 May. Fan is currently residing in Nevada.

19. Fan enrolled at UNR in Spring 2006 on an F1 student visa.

20. From 2006 Fall, Fan, who was 23 and single, was sexually and emotionally abused at work by Jiang, her direct advisor, who was 42 and married.

21, Fan was also required by Jiang to perform hundreds of hours of labor for Jiang's personal purposes that were not compensated.

22. Fan was hired at UNR in 2015 July as tenure-track Assistant Professor. From 2015 to 2020 April, Fan was on an F1 student visa and later an H1 temporary worker visa.

23. Fan was subjected to a sexual and emotional abuse by Jiang, who as Fan's academic mentor and member of Fan's Tenure Committee held great professional power of Fan.

## STATEMENT OF FACTS

***A. 2006-2008 Jiang Exploited His Position to Sexually and Emotionally Abuse Fan for Sex and Labor for His Own Purposes.***

<u>Fan Started to Be Subject to the Overwhelming Power Imbalance of Jiang.</u>

24. Jiang recruited Fan from China to the U.S. in 2006, and Fan studied as a graduate student at UNR on an F1 student visa. (If Jiang graded "unsatisfactory" on Fan's course credits for her Master thesis, Fan lost her F1 visa.) Jiang, as Fan's Master Thesis advisor, hired Fan with a stipend – $1,400 per month for the first year and $1,500 per month after as per UNR's Minimum Wages & Salaries. Jiang paid Fan using federal research grants, for which Jiang served as Principle Investigator.

25. From the beginning of Jiang's career to as far as 2008, Jiang created an environment in his group where his graduate students, all international, were afraid of being fired by Jiang or being terminated from stipends and visas by Jiang. Fan became used to Jiang's abuse. Although Chinese students were traditionally obedient to their teachers, Jiang fired at least two Chinese female students before he recruited Fan. Jiang made Fan completely subordinate to him. Jiang compelled his students, including Fan, to work in the student office and lab at night, particularly from evening to midnight and early hours, and sometimes overnight, in addition to daytime hours.

26. UNR ignored Jiang's abusive work conditions. When Fan studied at UNR, Fan received no training by UNR on preventing and reporting harassment and discrimination, especially for international students whose visas and stipends depended on their advisors. The Palmer Engineering building, where ME Department was located, had a hierarchical floor plan, and its offices and labs had no interior windows, making sexual assaults easy.

27. In 2006, the stipend was Fan's entire livelihood. Fan's parents lived in China and had a total family income of approximately $300.00 per month in 2006 and in the preceding and subsequent years. On this level of income, it was financially impossible for Fan's family to financially support

Fan's studies in the United States and so Fan was completely reliant upon the stipend that was under Jiang's control.

28. In summer 2006, Jiang came back to the U.S. from a sabbatical leave.

29. In summer 2006, Jiang started to emotionally manipulate Fan by furiously blaming Fan for work performance, blaming students who were fired by Jiang and left without degrees, and complaining about his marital issues (sexless, verbal abuse, *etc*).

*Jiang's First Rape of Fan.*

30. One midnight in 2006 October, Jiang raped Fan in his office at UNR. Fan was 5'1" and less than 90 lb., Jiang was 5'11" and about 150 lb. Fan explicitly and verbally said to Jiang "No! No! No! …", exerted herself against Jiang with her arms and legs, and made her resistance clear with her body language and facial expressions. Jiang did not stop and penetrated Fan with his penis. He forcibly continued to have sex with Fan against Fan's will until he ejaculated inside Fan. Jiang did not use a condom when he initially penetrated Fan and for most of the sexual intercourse. Jiang did use a condom right before he ejaculated.

*Jiang's Subsequent Sexual and Emotional Abuse of Fan for Sex.*

31. The first rape set the stage for future encounters. From this point forward, Jiang raped and sexually abused Fan many times in work time, at Jiang's office and lab at UNR, in Jiang's personal vehicles, in Jiang's house, and in hotel rooms, one or two times a week, and sometimes three times a day, always at his initiative and insistence. Jiang's push for rush sex was all from him and about himself. Jiang always ignored Fan's crying and begging to stop during sexual intercourse. Jiang insisted to have sex no matter whether Fan's body was ready or not, and even when Fan begged him not to because she suffered stomach pains and menstrual periods.

32. Jiang and Fan's first oral sex was a rape, occurred in 2006 November in Jiang's personal vehicle. In the incident, Fan had a period and Jiang coerced Fan into having oral sex by brutally pushing Fan's head down to his penis against Fan's will. Jiang did not ask for permission. Fan said "I can't", but Jiang ignored Fan and forced Fan's head down anyway

33. In 2007, after Jiang's regular summer travel to China, Jiang returned to Nevada and proceeded to infect Fan with Chlamydia.

34. After Fan's diagnosis, UNR Student Health Center requested that Fan provide the identity of Fan's partner. Jiang then compelled Fan to lie to UNR Student Health Center by withholding her partner's identify to protect Jiang from being exposed.

35. Jiang required Fan to share pills the doctor prescribed to Fan for the chlamydia, in contravention of the doctor's directive and risking Fan's gynecological health.

36. The brutal sexual intercourses caused urethritis and bruises to Fan and caused cuts, bleeding, itching, and swollen to Fan's vagina. Other than the stipend paid via UNR, Jiang never paid Fan for sex out of his own pocket, or reimbursed Fan's expenses on booking hotel rooms as per his requirement. Jiang's pattern of abuse caused Fan to believe that if Fan withheld sex, Fan would suffer harm and damage on her visa, schooling prospects, stipend, degree, and employment. This sexually abusive pattern lasted until 2019 December.

37. While dominating this sexual relationship, Jiang brainwashed Fan into completely trusting and fearing him. Jiang threatened Fan to keep it secret otherwise both Jiang and Fan's lives and careers would be ruined, leaving Fan no emotional outlet but depression. Knowing Fan was isolated and naive, Jiang brainwashed Fan that he was the only person in the U.S. who cared her, that he treated Fan better than anyone else in the world, that what he did was for Fan's sake, that Fan should be grateful to him, *etc*. When Fan hesitated to engage in sex, Jiang furiously berated Fan for being extremely selfish, being unconscious, returning kindness with ingratitude, not knowing what he did was good for her, *etc*. Fan had been suffering the Stockholm syndrome in this power-imbalance abusive relationship and post-traumatic stress disorder. This emotionally abusive pattern lasted until 2020 July.

*Jiang's Abuse of Fan for Labor for His Own Purposes.*

38. Jiang required Fan to babysit Jiang's two daughters, Emily Jiang and Jenny Jiang, who were around 8 and 5 in 2006-2007, for hundreds of hours at work time in student office, regardless that Fan needed to fulfill academic requirements.

39. Jiang paid Fan nothing out of his own pocket for the babysitting

40. Jiang required Fan to fabricate grips that were beyond the capability of technicians at UNR, with no fund or supplies.

41. Fan turned to her father, who was in China, to complete Jiang's requirement for fabricated grips. Fabricating the grips was irrelevant to Fan's academic work. Jiang used the grips for

teaching and other projects. These grips cost at least thousands of dollars if fabricated in the U.S., and Jiang reimbursed Fan or Fan's father nothing for labor, materials, processing, *etc*.

**B. 2008-2015 Jiang Continued Exploiting Fan for Sex.**

42. After Fan graduated from UNR in 2008, Fan left Reno. When having opportunities, Jiang initiated and insisted (cyber-)sex with Fan occasionally, and Jiang ignored Fan's crying during sexual intercourse.

**C. 2015-2020 Jiang Continued Sexual and Emotional Abuse of Fan and Threatened Fan.**

<u>Fan Was Subject to the Problematic Power Imbalance of Jiang again.</u>

43. In 2015 July, Fan started to work as tenure-track Assistant Professor in ME Department at UNR on an F1 student visa, later on an H1 temporary worker visa. (Under the H1 requirements, ff Fan became unemployed, Fan had to leave U.S. immediately.)

44. Jiang was assigned as Fan's academic mentor and served as Fan's Tenure Committee.

45. From 2016 to 2019, ME Department had only four tenured faculty members who were eligible to serve on Fan's Tenure Committee. All these four had worked in the department for over twenty years.

46. Fan and Jiang's abusive and sexual relationship resumed and followed the 2006-2008 pattern of "superior-subordinate sex". Jiang made Fan gratefully, although sometimes tearfully as in 2006-2008, satisfy Jiang in sex by belittling Fan's academic achievements and brainwashing Fan that it was Jiang who made Fan hired by UNR.

<u>Fan's First Attempt to Report the Sexual Relationship.</u>

47. In 2019 Summer, Fan's depression reached its peak. On August 13, 2019, at work, Fan spoke to Jiang about reporting their relationship according to UNR bylaws and disclosing Conflict of Interest for Fan's tenure evaluation. Jiang became enraged, furiously berated Fan, and was about to beat Fan. Department Chair heard Fan's office door was slammed. Jiang then intimidated Fan and asked her to hide their quarrel from the Chair and not to expose him, risking the validity of Fan's tenure evaluation. Considering her vulnerability and precarious status (on an H1 visa and tenure track) and recent deterrent terminations of tenure-track assistant professors in UNR ME Department, Fan reluctantly hided Jiang's involvement and did not report the sexual relationship.

48. Fan felt threatened by these actions and requests of Jiang, and Fan felt that her professional standing was under threat.

**D. 2020-2021 Jiang and Wu Threatened and Defamed Fan.**

<u>Fan's single message to Wu.</u>

49. In late April, 2020, Fan's permanent residency was approved. On April 25, Fan sent Wu a single text message that Jiang had cheated on Wu at least since 2006.

<u>Wu and Jiang's Attempts to Confront and Threats to Fan's Physical Safety and Career.</u>

50. Jiang threatened Fan with physical harm after learning that Fan sent Wu the text message.

51. On May 12, 2020, Wu confronted Fan by outrageously knocking at the door of Fan's apartment. Considering Jiang's warnings of physical harm made after April 25, Fan did not open the door. Outside Fan's apartment, Wu texted Fan that she wanted to hear Fan's side of story.

52. Wu refused to leave from outside the door. Fan felt scared for her safety and so Fan texted Wu that Fan would call 911. Wu finally left at this point.

53. On May 13, 2020 and after, being enraged, Jiang notified Fan over the phone that Wu hated Fan, and that Fan needed to protect herself from physical harm. Jiang said to Fan that Wu wanted to sue Fan for sexual bribery and adultery. Jiang said to Fan that Jiang and Wu would notify ME Department Tenure Committee, with whom Jiang's family had developed 25 years of friendship, that Fan was an adulteress and ruined Jiang and Wu's 30 years marriage and the Committee would definitely deny Fan's tenure.

54. In June 2020, Fan's tenure evaluation started in ME Department. Jiang had a decisive role because Jiang was the only Tenure Committee member in Fan's research field.

55. On July 10, 2020, per Jiang's request, Jiang and Fan met in person at a park in Reno. Jiang said to Fan that Jiang and Wu would ruin Fan's life, tenure, and career if Fan insisted to report the sexual relationship. Fan viewed this statement as a threat and felt scared and harassed by Jiang.

56. On July 20, 2020, Fan received a cease and desist letter from Jiang's attorney. This letter was full of false accusations against Fan.

57. In the late afternoon of July 21, 2020, a faculty member in ME Department informed Fan that Jiang's office was vandalized. Fan then came to campus from home and cooperated with police investigation.

58. On August 11, 2020, Jiang stopped by Fan's office at UNR and asked Fan to open the door, and Fan did not. Outside Fan's office, Jiang furiously berated Fan that Fan ruined Jiang and Wu's 30-year marriage. Jiang furiously threatened to abuse the law byrequesting a Protection Order against Fan and end Fan's career, if Fan reported the sexual relationship. Jiang furiously threatened to further abuse the law by showing the police and UNR the cease and desist letter to identify Fan as a suspect for the office vandalism case, if Fan reported the sexual relationship.

59. From June to September, Jiang threatened Fan that Jiang would end Fan's life and career in the U.S. if Fan reported him, in particular that Fan would be fired by UNR, via text, via phone, and via a recently retired Professor in ME Department who relayed the threatening message to Fan. Jiang slut shamed and blamed Fan for being extremely selfish, being ungrateful, returning kindness with ingratitude, not knowing what he did was good for her, being self-destroyed by doing wrong things, *etc*. Jiang furiously intimidated Fan that he would beat Fan as he did to Wu in 2002 and 2009, and that he would contact Fan's Ph.D. advisor and other mentors in academia. Fan's psychological health became more and more precarious, and Jiang and Wu's conduct caused Fan to have suicidal ideation that were serious and disturbing.

*Fan Filed a Title IX Complaint with UNR.*

60. On January 29, 2021, Fan filed a Title IX complaint against Jiang with UNR and forwarded the complaint to Jiang.

*Jiang Applied for a Protection Order against Fan.*

61. Jiang applied for a Protection Order against Fan on February 11, 2021. Jiang falsely accused Fan of making many death threats. To support his allegation, Jiang fabricated WeChat messages. Jiang falsely accused Fan of vandalizing his office, falsely claimed that Fan was mentally unstable, falsely speculated Fan's purpose of gun purchase, and falsely claimed that their sexual relationship was a consensual affair. Jiang falsely claimed that Jiang attempted to sever the sexual relationship in 2019 and that Fan refused and threatened to tell Jiang's wife if Jiang insisted on breaking up with her. Jiang intentionally hid the power-imbalance and abusive nature of the rapes and the "superior-subordinate" sexual relations, which could never be consent because Jiang's use of power rendered invalid whatever consent he obtained to engage with Fan sexually. Although an

Extended Protection Order was denied, Jiang caused damage on Fan's professional reputation, employment opportunities in academia, and already precarious psychological condition.

### *Jiang Defamed Fan among Faculty and Students at UNR.*

62. Beginning in 2020 August, Jiang spread false and defamatory statements about Fan at workplace. These statements included: Fan made death threats, Fan vandalized Jiang's office, Fan threatened to expose Jiang, Fan was too in love with Jiang, Fan got mad when Jiang broke up with Fan, *etc*. Jiang's false statements actively sabotaged Fan's work environment at UNR and destroyed Fan's professional reputation among fellow academics and academic institutions. Jiang's statements falsely indicated that Fan committed crimes and was proactively engaging in sexual misconduct. Jiang's defamation ensued widespread condemnation of Fan's reputation and sabotaged Fan's employment opportunities in academic departments worldwide because commitment of crimes or sexual misconduct is incompatible with Fan's profession.

## CLAIMS FOR RELIEF

### COUNT I

### SEX TRAFFICKING, 18 U.S.C. §§ 1591, 1595 (v. Jiang)

63. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

64. The sex trafficking provisions of 18 U.S.C. §§ 1591 provide: "Whoever knowingly – (1) in or affecting interstate commerce…recruits entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person …knowing, or…in reckless disregard of the fact, that means of force, threats of force, fraud, coercion…or any combination of such means will be used to cause the person to engage in a commercial sex act...shall be punished…"

65. "Commercial sex act" is defined in 18 U.S.C. §§ 1591(e)(3) as "any sex act, on account of which anything of value is given to or received by any person."

66. Jiang knowingly recruited Fan from China to the U.S. in the name of study at UNR. Then while in the U.S., Jiang coerced and pressured Fan to engage in abusive (and commercial) sex acts against Fan's will, using his intense and complete power and authority on Fan's visa, schooling prospects, stipend, degree, and employment. Jiang knowingly obtained and, through his maneuvering,

paid for Fan's sexual services during work time using federal grants via UNR and thus the sex acts were commercial sex acts.

67. Jiang engaged in numerous commercial sex acts with Fan.

68. Jiang employed force in causing Fan to engage in the commercial sex acts. On several occasions, Jiang violently raped Fan.

69. Jiang's conduct has caused Fan serious physical and psychological harm which appear to be long lasting and which are currently being looked into for evaluation.

70. Jiang's conduct has also caused Fan serious reputational harm and serious professional harm.

71. Pursuant to 18 U.S.C. § 1595(a), which provides for the recovery of civil damages for violations of 18 U.S.C. § 1591, Fan is entitled to recover damages, including punitive damages, and reasonable attorney's fees for Jiang's wrongful conduct.

COUNT II

FORCED LABOR, 18 U.S.C. §§ 1589, 1595 (v. Jiang)

72. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

73. The forced labor provisions of 18 U.S.C. §§ 1589 provide "(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint shall be punished as provided under subsection (d)."

74. Jiang knowingly obtained Fan's labor by requiring her to babysit his children for his benefit for no compensation.

75. Jiang knowingly obtained Fan's sexual services by physically forcing her to have sex and perform oral sex, and by coercing her to have sex for fear of professional and academic destruction.

76. Jiang's pattern of abuse caused Fan to believe that if Fan withheld sex from Jiang, Fan would suffer harm and damage on her visa, schooling prospects, stipend, degree, and employment. Using his intense and complete power and authority, Jiang coerced and pressured on Fan and knowingly obtained Fan's sexual services and babysitting against Fan's will during work time.

77. Jiang's conduct has caused Fan serious physical and psychological harm which appear to be long lasting and which are currently being looked into for evaluation.

78. Jiang's conduct has also caused Fan serious reputational harm and serious professional harm.

79. Pursuant to 18 U.S.C. § 1595(a), which provides for the recovery of civil damages for violations of 18 U.S.C. § 1589, Fan is entitled to recover damages, including punitive damages, and reasonable attorney's fees for Jiang's wrongful conduct.

## COUNT III

TRAFFICKING INTO SERVITUDE, 18 U.S.C. §§ 1590, 1595 (v. Jiang)

80. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

81. The trafficking into servitude provision of 18 U.S.C. §§ 1590 provides that recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violation of laws prohibiting, inter alia, forced labor shall subject the defendant to punishment.

82. Jiang knowingly recruited Fan from China to the U.S. to provide labor and services to him in violation of laws prohibiting these actions. Jiang coerced and pressured on Fan to engage in abusive and commercial sex acts and academically irrelevant uncompensated babysitting labor against Fan's will, using his intense and complete power and authority on Fan's visa, schooling prospects, stipend, degree, and employment. Jiang knowingly obtained and, through his maneuvering, paid for Fan's sexual services during work time using federal grants via UNR.

83. Jiang's conduct has caused Fan serious physical and psychological harm which appear to be long lasting and which are currently being looked into for evaluation.

84. Jiang's conduct has also caused Fan serious reputational harm and serious professional harm.

85. Pursuant to 18 U.S.C. § 1595(a), which provides for the recovery of civil damages for violations of 18 U.S.C. § 1590, Fan is entitled to recover damages, including punitive damages, and reasonable attorney's fees for Jiang's wrongful conduct.

COUNT IV

CIVIL ACTION PERSUIANT TO NRS 41.1399 TO RECOVER DAMAGES FOR SEX TRAFFICKING UNDER NRS 201.300

86. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

87. Jiang knowingly recruited Fan from China to Reno, Nevada in the United States in the name of study at UNR. Then while in the U.S., Jiang coerced and pressured Fan to engage in abusive and commercial sex acts against Fan's will that amounted to forced prostitution, using his intense and complete power and authority on Fan's visa, schooling prospects, stipend, degree, and employment. Jiang knowingly obtained and, through his maneuvering, paid for Fan's sexual services during work time using federal grants via UNR and thus the sex acts were commercial sex acts.

88. Jiang engaged in numerous commercial sex acts with Fan that amounted to forced prostitution for Fan.

89. Jiang employed force in causing Fan to engage in the commercial sex acts that amounted to prostitution. On several occasions, Jiang violently raped Fan.

90. Jiang's conduct has caused Fan serious physical and psychological harm which appear to be long lasting and which are currently being looked into for evaluation.

91. Jiang's conduct has also caused Fan serious reputational harm and serious professional harm.

92. Pursuant to NRS 41.1399 which provides for the recovery of civil damages for violations of NRS 201.300, Fan is entitled to recover damages, including punitive damages, and reasonable attorney's fees for Jiang's wrongful conduct.

93. Pursuant to NRS 41.1399 (4), Jiang's acts were willful and malicious and therefore Fan is entitled to treble damages.

## COUNT V

### INVOLUNTARY SERVITUDE, NRS 200.463 (v. Jiang)

94. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

95. Jiang knowingly obtained Fan's labor by requiring her to babysit his children for his benefit for no compensation.

96. Jiang knowingly obtained Fan's sexual services by physically forcing her to have sex and perform oral sex, and by coercing her to have sex for fear of professional and academic destruction.

97. Jiang's pattern of abuse caused Fan to believe that if Fan withheld sex from Jiang, Fan would suffer harm and damage on her visa, schooling prospects, stipend, degree, and employment. Using his intense and complete power and authority, Jiang coerced Fan and put pressure on Fan and knowingly obtained Fan's sexual services and babysitting against Fan's will during work time. Jiang's conduct caused Fan serious physical and psychological harm.

98. Pursuant to NRS 200.463, which provides for the recovery of civil damages for restitution, Fan is entitled to recover damages equal to the amount owed for uncompensated work, plus punitive damages, and reasonable attorney's fees for Jiang's wrongful conduct.

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (v. Jiang and Wu)

99. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

100. The elements of intentional infliction of emotional distress are that (1) the defendant engaged in "extreme and outrageous" conduct towards the plaintiff; (2) the defendant intended or

recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress; (3) the plaintiff endured severe or extreme emotional distress; and (4) the defendant's conduct actually and proximately caused the plaintiff's distress.

101. The conduct of Jiang and Wu, as described herein and including many violent rapes and threats to keep everything secret, was extreme, outrageous and beyond the scope of common decency and were intended and recklessly to cause Fan severe emotional distress. Jiang and Wu's extreme and outrageous conduct toward Fan had the clear intent of causing Fan great emotional distress so that Fan would perform sex and labor services and would not report Jiang's sexual assaults and acts of abusive sex with UNR.

102. As a result of the Jiang and Wu's tortious conduct, Fan has suffered severe emotional distress for conduct which no reasonable person should be expected to endure, and Fan is entitled to damages in an amount to be determined at trial.

## COUNT VII

## DEFAMATION (v. Jiang)

103. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

104. The conduct of Jiang was defamatory *per se*. The defamatory statements were statements indicating that Fan committed crimes and was proactivly engaging insexual misconduct, which are incompatible with Fan's profession. Jiang's untrue statements are harmful to Fan's professional reputation and employment opportunities in academic departments. Jiang made the statements with intentional malice because Jiang had knowledge that these statements were false or with reckless disregard of whether it was false or not.

105. As a result of the Jiang' conduct, Fan has suffered severe damage which no reasonable person should be expected to endure, and Fan is entitled to damages in an amount to be determined at trial.

COUNT VIII

TRESPASSING (v. Wu)

106. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

107. Wu went into Fan's apartment building without permission and remained outside Fan's door without Fan's permission.

108. Upon information and belief, Wu went into Fan's apartment building with the intent to frighten and threaten Fan and to willfully remained at the door of Fan's apartment after being instructed to leave.

109. Fan felt scared, threatened, harassed, and unsafe when Wu would not leave the apartment building.

110. As a result of the Wu' tortious conduct, Fan has suffered severe emotional distress for conduct which no reasonable person should be expected to endure, and Fan is entitled to damages in an amount to be determined at trial.

COUNT IX

ASSAULT (v. Wu)

111. Plaintiff realleges the allegations contained in the above paragraphs, as though fully stated herein.

112. Wu went into Fan's apartment building without permission and remained outside Fan's door without Fan's permission while texting Fan about the Jiang incidents.

113. Upon information and belief, Wu went into Fan's apartment building with the intent to frighten and threaten Fan and to willfully remained at the door of Fan's apartment after being instructed to leave.

114. Fan felt scared, threatened, harassed, and unsafe when Wu would not leave the apartment building. In light of Jiang's previous assertions that Wu hated Fan and may try to physically hurt Fan, Fan feared for her physical safety at this time and was scared that she could be physically hurt imminently.

115.   As a result of the Wu' tortious conduct, Fan has suffered severe emotional distress for conduct which no reasonable person should be expected to endure, and Fan is entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgement against Defendants for:

(1) Compensatory damages and punitive damages in an amount not less than a total of $20,000,000.00;

(2) Restitution in an amount to be determined at trial for uncompensated work under 18 U.S.C. §§ 1589 and 1595, and under NRS 200.463.

(3) An award of litigation costs and expenses, including reasonable attorneys' fees to the Plaintiff.

(4) An award of pre-judgment interest and post-judgement interest available under law; and

(5) Such additional and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED this 25st day of October, 2021.

       /s/ Ryan J. Cann_____
Ryan J. Cann, Esq.
Nevada Bar No. 11073
CANN IP LAW PLLC
1 East Liberty Street, Suite 600
Reno, Nevada 89501
775-234-3796  Telephone
info@canniplaw.com  Email
Attorney for Plaintiff