Enrique R. Schaerer, Esq.
Nevada State Bar No. 11706
MAUPIN, COX & LeGOY
4785 Caughlin Parkway
Reno, NV 89519
Phone: (775) 827-2000
Fax:    (775) 827-7026
Attorney for Defendant
Yanyao Jiang

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEIFEI FAN,<br><br>          Plaintiff,<br><br>vs.<br><br>YANYAO JIANG and WEI WU,<br><br>          Defendants. | Case No.:  3:21-cv-00458-MMD-CLB<br><br>**MOTION TO DISMISS**<br>**AND/OR TO STRIKE**<br><br>**[FRCP 12(B)(1), 12(B)(6), AND 12(F)]** |

Defendant YANYAO JIANG ("**Jiang**"), by and through his counsel of record, hereby moves this Court for an order dismissing and/or striking, with prejudice, various claims in the Complaint filed by Plaintiff FEIFEI FAN ("**Fan**") under Federal Rules of Civil Procedure ("**Rules**") 12(b)(1), 12(b)(6), and 12(f). The grounds for this Motion are as follows:

- Count I should be dismissed under Rule 12(b)(6) insofar as it is time-barred (10-year statute of limitations), fails to allege a "commercial sex act" or nexus to "interstate or foreign commerce," and thus fails to state a claim for **sex trafficking** under federal law.

- Count II should be dismissed under Rule 12(b)(6) insofar as it is time-barred (10-year statute), fails to allege "labor or services" or a nexus to out-of-state commerce, and thus fails to state a claim for **forced labor** under federal law.

- Count III should be dismissed under Rule 12(b)(6) insofar as it is time-barred (10-year statute), fails to allege "labor or services" or a nexus to out-of-state commerce, and thus fails to state a claim for **trafficking in servitude** under federal law, and may be independently stricken as redundant of Count I insofar as it re-alleges sex trafficking.

- Count IV should be dismissed under Rule 12(b)(6) insofar as it is time-barred (6-year statute of limitations), fails to allege "prostitution," and thus fails to state a claim for **sex trafficking** under Nevada law.



- Count V should be dismissed under Rule 12(b)(6) insofar as it is time-barred (3-year statute of limitations), fails to allege "labor or services," and thus fails to state a claim for **involuntary servitude** under Nevada law.

- Count VI should be dismissed under Rule 12(b)(6) insofar as it is time-barred (2-year statute of limitations) and precluded by the litigation privilege, and thus fails to state a claim for **intentional infliction of emotional distress** under Nevada law.

- Count VII should be dismissed under Rule 12(b)(6) insofar as it is time-barred (2-year statute of limitations) and precluded by the litigation privilege, and thus fails to state a claim for **defamation** under Nevada law.

- Counts IV–VII, in addition to Counts VIII–IX, should be dismissed under Rule 12(b)(1) as state-law claims that substantially predominate over the federal claims.

This Motion is made pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) and is supported by the following Memorandum of Points and Authorities, as well as the documents, papers, pleadings, and records on file or to be filed in this case, any oral arguments of counsel, and any other matter that may properly come before the Court for its consideration of this motion.

DATED: December 6, 2021.

MAUPIN, COX & LEGOY

By:   _/s/ Enrique R. Schaerer_____
Enrique R. Schaerer, Esq.

Attorneys for Defendant Yanyao Jiang

**MEMORANDUM OF POINTS AND AUTHORITIES**

Jiang moves to dismiss and strike, with prejudice, various claims (or parts of claims) in the Complaint filed by Fan under Rules 12(b)(1), 12(b)(6), and 12(f).

## I.     FACTUAL AND LEGAL BACKGROUND[1]

The Complaint alleges: In 2005–06, Jiang "recruited" Fan, then a 23-year-old adult, from China to pursue a master's degree in mechanical engineering under his tutelage at UNR. Compl. ¶¶ 1, 24. In Spring 2006, Fan enrolled at UNR on an F1 student visa and worked as a student

---

[1] This Motion accepts, as it must, all well-pleaded factual allegations as true. However, for the record, Jiang's on–off relationship with Fan was never anything but a consensual relationship between two grown adults. Jiang is a respected member of the local community and is shocked by these incredible, outrageous allegations.

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mcllawfirm.com

2

employee under Jiang, with a stipend of $1,400/month the first year and $1,500/month the second year of her two-year graduate program. *Id.* ¶¶ 19, 24. In Summer 2006, Jiang came back from sabbatical leave. *Id.* ¶ 28. Based on his power over Fan's visa, degree, and stipend, Jiang "raped" Fan starting in October 2006 by vaginal sex and in November 2006 by oral sex, and continuing "one or two times a week, and sometimes three times a day," in his office, lab, house, vehicles, and hotel rooms, until Fan graduated and "left Reno" in 2008. *Id.* ¶¶ 30–32, 42. From Fall 2006 until Spring 2008, Jiang also required Fan to "babysit" his two daughters and to fabricate "grips" without pay. *Id.* ¶¶ 38–41. Significantly, Fan offers little detail or elaboration for the over 7-year gap between Spring 2008 and Summer 2015 when she was away from UNR and Reno, other than a single conclusory, vague sentence: "When having opportunities, Jiang initiated and insisted (cyber-)sex with Fan occasionally, and Jiang ignored Fan's crying during sexual intercourse." *Id.* ¶ 42.[2] In July 2015, Fan returned to UNR as a tenure-track mechanical engineering professor on an F1 student visa, later an H1 temporary worker visa, with Jiang as her "academic mentor" and on her "Tenure Committee." *Id.* ¶¶ 43–44. Notably, Fan alleges her sexually abusive relationship with Jiang "resumed" in the "2006-2008 pattern," thus conceding that the relationship had ended after 2008, only *resuming* in 2015 after an over 7-year hiatus. *Id.* ¶ 46. On August 13, 2019, when Fan threatened to report Jiang to UNR, Jiang was about to beat her before the department chair intervened. *Id.* ¶ 47. In December 2019, Fan and Jiang's sexual relationship ended. *Id.* ¶ 36. On April 25, 2020, after Fan became a permanent resident, Fan informed Jiang's wife, Wei Wu ("**Wu**"), of her affair with Jiang, who phoned Fan on May 13, 2020 to threaten to interfere with Fan's tenure prospects. *Id.* ¶¶ 49, 53. On July 10, 2020, Jiang met Fan at a park and threatened to ruin her life, tenure, and career. *Id.* ¶ 55. On July 20, 2020, Fan received a cease-and-desist letter from Jiang's attorney. *Id.* ¶ 56. The next day, on July 21, 2020, Fan learned Jiang's office

---

[2] Under Federal Rule of Evidence 201(b)(2), the Court should take judicial notice that, from 2008 to 2015, Fan in fact worked thousands of miles away, including in private industry as a "Seismic/Stress Analysis Engineer" for The Shaw Group, Inc. at the U.S. Department of Energy's Savannah River Site in or near Aiken, South Carolina. Feifei Fan's Curriculum Vitae, http://feifei-fan-group.org/wp-content/uploads/2020/12/Curriculum-Vitae.pdf (last visited Dec. 6, 2021); Savannah River Site, https://www.dnfsb.gov/doe-sites/savannah-river-site (same).

MAUPIN COX LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

had been vandalized. *Id.* ¶ 57. On August 11, 2020, Jiang moved offices and threatened a protection order against Fan. *Id.* ¶ 58. From June to September 2020, Jiang threatened to end Fan's life and career via text, phone, and a recently retired professor, including by "beat[ing] Fan as he did to Wu in 2002 and 2009." *Id.* ¶ 59. On January 29, 2021, Fan filed a Title IX complaint against Jiang with UNR and forwarded the complaint to Jiang. *Id.* ¶ 60. On February 11, 2021, Jiang applied for a protection order, which was not extended but caused damage to Fan's "professional reputation." *Id.* ¶ 61.[3] Starting in August 2020, Jiang "defamed" Fan at the workplace by saying "Fan made death threats," "Fan vandalized Jiang's office," "Fan threatened to expose Jiang," "Fan was too in love with Jiang," and "Fan got mad when Jiang broke up with Fan," which "destroyed" her professional reputation and "sabotaged" her employment opportunities in academia. *Id.* ¶ 62.[4]

        The Complaint includes: nine claims for relief—six against Jiang alone, one against Jiang and Wu together, and two against Wu alone. Only three arise under federal law: Count I for sex trafficking (Compl. ¶¶ 63–71); Count II for forced labor (*id.* ¶¶ 72–79); and Count III for trafficking in servitude (*id.* ¶¶ 80–85). Each is alleged against Jiang alone. Count I is similar to Count IV for sex trafficking under Nevada law (*id.* ¶¶ 86–93), Count II is similar to Count V for involuntary servitude under Nevada law (*id.* ¶¶ 94–98), and it is fair to say the state-law claims predominate over the federal-law claims in both type and number.[5] Count VI for intentional infliction of emotional distress ("**IIED**") is a state claim against both Jiang and Wu. *Id.* ¶¶ 99–102. In addition to Counts IV and V above, Count VII for defamation is a state claim against just

---

[3] Attached as Exhibits "1" and "2" are copies of the cease-and-desist letter and protection order materials. The Court should take judicial notice of them, as their contents are at issue in the Complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (taking judicial notice of documents whose contents are alleged in the complaint but not physically attached to it).

[4] The Court should take judicial notice that, in July 2021, Fan received tenure at UNR: https://nshe.nevada.edu/wp-content/uploads/Board-of-Regents/minutes/2021/03.04.21-03.05.21.pdf (listing, at item 9e on page 11, Fan's approved tenure). Fed. R. Evid. 201(b)(2).

[5] Notably, the Court should dismiss state claims insofar as they "substantially predominate[]" over federal claims. 28 U.S.C.A. § 1367(c)(2); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) (stating that, where state claims constitute "the real body of a case," they "may fairly be dismissed"); *Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir.2008) (stating survival of a federal claim does not require retaining jurisdiction over seven state-law claims).

MAUPIN COX LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

1  Jiang. *Id.* ¶¶ 103–05. The remaining claims—Count VIII for trespassing and Count IX for

2  assault—are state claims against Wu. *Id.* ¶¶ 106–15.

3      The only federal claims arise under the Trafficking Victims Protection Reauthorization

4  Act of 2003 ("**TVPRA**"), which, among other things, added a civil remedy to a prior criminal

5  statute, the Trafficking Victims Protection Act of 2000 ("**TVPA**"). The civil remedy is codified

6  at 18 U.S.C. § 1595, and legislative history makes clear that Congress relied on its Commerce

7  Clause power to enact this civil remedy. H.R. Rep. No. 108–264(I), at 14 (2003) ("[T]he

8  Committee finds the authority for [the TVPRA] in article I, section 8 of the Constitution."); *see*

9  U.S. Const., art. I, § 8 (granting congressional power "[t]o regulate Commerce with foreign

10  Nations, and among the several States"). TVPRA's purpose was not to make actionable all sexual

11  affairs between a boss and employee, or teacher and adult student, or any consensual sex between

12  two adults where one treated the other to, for example, dinner. That would lead to an absurd

13  result, violate the rule of lenity, and render the statute unconstitutionally overbroad and vague.

14  Instead, Congress sensibly sought to combat clear and "severe forms of trafficking in persons."

15  H.R. Rep. No. 108–264(I), at 10 (2003).

16      As set forth below, this Court should dismiss and strike several of the above claims (and

17  portions of claims) under Rules 12(b)(1), 12(b)(6), and 12(f).

18  **II.    LEGAL STANDARDS**

19      Rule 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction.

20      Under Rule 12(b)(6), this Court should dismiss a claim if it lacks "sufficient factual

21  matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*,

22  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570) (emphasis

23  added). This "facial plausibility" requires factual content that allows the Court to draw the

24  "reasonable inference" that a defendant is liable for alleged misconduct. *Id.* The Court must

25  accept all well-pleaded facts as true, but not threadbare recitals of the elements of a claim or legal

26  conclusions couched as factual allegations. *Id.* It must then determine whether the well-pleaded

MAUPIN|COX|LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

facts "plausibly give rise to an entitlement to relief." *Id.* at 679. No facial plausibility exists where those facts do not suggest "more than the mere possibility of misconduct." *Id.*

Rule 12(f) authorizes the Court to "strike" from the Complaint "any redundant" matter. A claim is redundant if it "appear[s] anywhere else in the complaint." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (striking "allegations that constitute a needless repetition of other averments").

The Court may dismiss or strike a claim with prejudice where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted).

## III.   ARGUMENT

## A.   Count I fails to state a federal claim for sex trafficking insofar as it is time-barred and fails to allege a commercial sex act or a nexus to out-of-state commerce.

Count I alleges sex trafficking against Jiang under TVPA, 18 U.S.C. § 1591, through TVPRA's civil remedy, 18 U.S.C. § 1595. Compl. ¶¶ 63–71. It fails to state a claim for three independent reasons: (1) it is time-barred insofar as it relies—indeed, heavily relies—on alleged facts that occurred well before October 25, 2011 under the applicable 10-year statute of limitations of 18 U.S.C. § 1595(c)(1); (2) it fails plausibly to allege a "commercial sex act" under a reasonable interpretation of the term that does not lead to an absurd result, violate the rule of lenity, and render TVPRA unconstitutionally overbroad and vague; and (3) it fails to allege, especially once the time-barred factual allegations are properly dismissed, any nexus or connection to "interstate or foreign commerce," as required under 18 U.S.C. § 1591 and the Commerce Clause power by which Congress adopted the civil remedy of 18 U.S.C. § 1595.

### 1.   The sex-trafficking claim is time-barred under TVPRA insofar as it relies, even heavily, on alleged facts that occurred well before October 25, 2011.

TVPA is a criminal statute, and TVPRA provides a civil remedy. 18 U.S.C. § 1595(a) (providing, in relevant part, that "[a]n individual who is a victim of a violation of [TVPA] may

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

bring a civil action against the perpetrator"). But for this civil remedy, Fan could not bring a federal sex-trafficking claim against Jiang, only the United States could (typically after careful and thoughtful evaluation in the exercise of prosecutorial discretion). Under TVPRA, the claim is subject to a <u>10-year statute of limitations</u>. 18 U.S.C. § 1595(c)(1) (providing, in relevant part, that "[n]o action may be maintained under subsection (a) unless it is commenced not later than . . . 10 years after the cause of action arose"). Hence, since Fan did not file the Complaint until October 25, 2021, her federal sex-trafficking claim is time-barred for all alleged facts <u>before October 25, 2011</u>.

Fan alleges three discrete timeframes with three distinct types of sexual misconduct: (1) <u>the 2006–08 timeframe</u>, for which Fan goes into great detail regarding how Jiang allegedly used his power over her visa, degree, and stipend to coerce her into sex; (2) <u>the 2008–15 timeframe</u>, during which Fan left Reno and UNR, lived and worked thousands of miles away, and interacted with Jiang only "occasionally" during unspecified, vague instances of "(cyber-)sex"; and (3) <u>the 2015–19 timeframe</u>, for which Fan admits she "resumed" a former sexual relationship with Jiang that had ended 7 years earlier, only now after freely choosing to return as a tenure-track assistant professor at UNR. While the gravamen of the Complaint is the 2006–2008 timeframe, Fan failed to file the Complaint until some 13–15 years afterwards. A federal sex-trafficking claim arising from alleged facts during the 2006–08 timeframe is therefore time-barred, and the conclusory, vague factual allegations of the 2008–15 timeframe (composed of only a single sentence) are plainly insufficient to connect the untimely 2006–08 timeframe to the timely 2015–19 timeframe, especially under *Twombly*/*Iqbal*'s heightened notice pleading standard that requires facial plausibility, beyond just mere possibility of liability.

Thus, the federal sex-trafficking claim is time-barred insofar as it relies on alleged facts before October 25, 2011 and should be partly dismissed, with prejudice, for this reason.

///

///


MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

7

**2.      The claim fails plausibly to allege a "commercial sex act" on a reasonable interpretation of the term that does not lead to an absurd result, violate the rule of lenity, and render TVPA unconstitutionally overbroad and vague.**

To establish a sex-trafficking claim under TVPA, Fan must allege and prove that Jiang (1) "knowingly" (2) "in or affecting interstate or foreign commerce" (3) "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" (4) "by any means" (5) Fan (6) "knowing," or "in reckless disregard of the fact," (7) that "means of force, threats of force, fraud, coercion," or "any combination of such means," (8) "will be used to cause [Fan] to engage in" (9) a "commercial sex act." 18 U.S.C. § 1591(a)(1).[6] Coercion includes "threats of serious harm" and "abuse or threatened abuse of law or the legal process," 18 U.S.C. § 1591(e)(2)(A), and serious harm includes "physical or nonphysical" harm, including "psychological, financial, or reputational" harm, that is "sufficiently serious" under the circumstances to compel a reasonable person to engage in a commercial sex act in order to avoid incurring the harm, 18 U.S.C. § 1591(e)(5). A ***commercial sex act*** is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

For the 2008–15 timeframe, the Complaint fails plausibly to allege a commercial sex act in violation of TVPA. First, it is altogether lacking in factual allegations, much less sufficient factual allegations to give rise to a reasonable inference of a TVPA violation under *Twombly* and *Iqbal*. For this 7-year timeframe—the longest stretch of time alleged—the Complaint has surprisingly little to say. In just one sentence, it alleges only that, "[w]hen having opportunities, Jiang initiated and insisted (cyber-)sex with Fan occasionally, and Jiang ignored Fan's crying during sexual intercourse." Compl. ¶ 42. That is conclusory as to the time and frequency of conduct, as well as the type of conduct at issue, and thus plainly insufficient for pleading purposes. Moreover, insofar as it alleges cybersex, it is vague. Did Fan and Jiang connect online

---

[6] Fan alleges no "venture" under TVPA. 18 U.S.C. § 1591(a)(2).

MAUPIN COX LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

1   and, if so, what did they do that constituted cybersex in a virtual, non-physical setting?

2         Significantly, cybersex that is non-physical—without any touching—does not constitute

3   a "sex act" within the meaning of TVPA, a criminal statute. A commercial sex act must involve

4   a sex act, which TVPA does not define. The ordinary meaning of a sex act is "*[p]hysical* sexual

5   activity," usually "involv[ing] the **touching** of another's breast, vagina, penis, or anus," where

6   "[b]oth" the "toucher" and "person touched" are said to engage in a sex act. *Sex Act*, Black's Law

7   Dictionary (11th ed. 2019) (defining sex act as interchangeable with, in relevant part, "sexual

8   relations") (emphasis added); *Sexual Relations*, Black's Law Dictionary (11th ed. 2019)

9   (defining "sexual relations" as, first, "[s]exual intercourse" or "sex" and, second, "[p]hysical

10  sexual activity that does not necessarily culminate in intercourse").

11        Since the plain meaning of "sex act" requires physical conduct, interpreting the term to

12  apply to both physical and non-physical contact would be rather absurd. *Rowland v. Cal. Men's*

13  *Colony*, 506 U.S. 194, 200 (1993) (invoking "the common mandate of statutory construction to

14  avoid absurd results"); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 670 (9th Cir. 2021)

15  ("We avoid absurd results when interpreting statutes."). It would also run afoul of the rule against

16  lenity, by which criminal statutes, like TVPA, "must be strictly construed, and any ambiguity

17  must be resolved in favor of lenity." *United States v. Enmons*, 410 U.S. 396, 411 (1973). In other

18  words, insofar as "sex act" could reasonably refer to physical conduct alone, or both physical and

19  non-physical conduct, this Court must resolve that ambiguity in favor of the more restrictive

20  interpretation—i.e., as referring to just physical conduct, thereby excluding cybersex as a basis

21  for sex-trafficking. Such an interpretation not only comports with plain meaning and the rule of

22  lenity, but also prevents the statute for being void for vagueness under the Fifth Amendment Due

23  Process Clause. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (providing that

24  a statute if void for vagueness if it "fails to provide a person of ordinary intelligence fair notice

25  of what is prohibited," or "is so standardless that it authorizes or encourages seriously

26  discriminatory enforcement" (internal quotation marks omitted)).

MAUPIN·COX·LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

9

Here, an opinion by Judge Richard Posner is instructive. *United States v. Taylor*, 640 F.3d 255, 257 (7th Cir. 2011). In *Taylor*, the Seventh Circuit reversed the criminal conviction of a defendant under 18 U.S.C. § 2422(b), which criminalized using any means of interstate or foreign commerce knowingly to persuade, induce, entice, or coerce any individual under age 18 to engage in prostitution or "any sexual activity" that could constitute a crime. The defendant had performed on-camera masturbation for a minor, and the Seventh Circuit concluded that the phrase "sexual activity" could not be construed so broadly as to encompass that non-physical act. *Id.* 256–60. The Seventh Circuit interpreted "sexual activity" to be synonymous with "sexual acts" that require physical contact. *Id.* at 259. Several aspects of the opinion are worth noting. First, just like a "sex act" under TVPA is undefined, "'[s]exual activity' is not a defined term in the federal criminal code (Title 18)." *Id.* at 257. Next, it makes sense to use definitions in Title 18's Chapter 109A—with a definition for "sexual act" (similar to "sex act")—"to assist in interpreting provisions in other chapters of Title 18 that punish sexual crimes," which would include TVPA, codified at Title 18's Chapter 77. *Id.* Further, if Congress intended "sex act" under TVPA to encompass non-physical conduct, in addition to physical conduct, it could have defined the term to specify a broader range that goes beyond ordinary meaning. *See id.* ("We need to decide whether 'sexual activity' encompasses a broader range of acts than 'sexual act.' If it did, one would expect the term to be defined in the statute, to indicate just how broad that range was."); *id.* at 259 ("Congress as we know defined 'sexual act' as excluding sex acts that do not involve physical contact between two people."). Finally, even if a "sex act" under TVPA could encompass non-physical conduct, in addition to just physical conduct, the rule of lenity requires this Court to read "sex act" to encompass physical conduct alone. *See id.* ("Maybe our interpretation of section 2422(b) is no more plausible than the government's. But when there are two equally plausible interpretations of a criminal statute, the defendant is entitled to the benefit of the more lenient one."); *see also United States v. Santos,* 553 U.S. 507, 514 (2008) ("[T]he tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted

in favor of the defendants subjected to them. This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.").

Thus, the federal sex-trafficking claim fails to state a claim insofar as it fails plausibly to allege a "commercial sex act" with sufficient detail, and relies on non-physical cybersex, for the 2008–15 timeframe.

### 3. The claim also fails to allege a nexus or connection to "interstate or foreign commerce," as required under 18 U.S.C. § 1591 and the Commerce Clause power by which Congress adopted the civil remedy of 18 U.S.C. § 1595.

TVPRA authorizes a civil action under TVPA, a criminal statute. The only reason Fan is able to bring claims under TVPA, including her first claim for sex trafficking, is because of TVPRA, which was enacted through Congress's Commerce Clause power. *See, e.g., Mojsilovic v. Oklahoma*, 841 F.3d 1129, 1133 (10th Cir. 2016) ("The TVPRA was not enacted under the Thirteenth Amendment; it was enacted under Congress's Commerce Clause powers."); *Francisco v. Susano*, 525 F. App'x 828, 834 n.8 (10th Cir. 2013) (unpublished) (recognizing "TVPA was enacted under Congress' Commerce Clause powers"); *Ditullio v. Boehm*, 662 F.3d 1091, 1098 n.4 (9th Cir. 2011) (noting "Congress enacted [TVPA] under its Commerce Clause powers"); H.R. Rep. No. 108–264(I), at 14 (2003) ("[T]he Committee finds the authority for [TVPRA] in article I, section 8 of the Constitution.").

For sex trafficking, TVPA explicitly includes a nexus requirement that the alleged sex trafficking be "in or affecting interstate or foreign commerce." 18 U.S.C. § 1591(a). While Fan attempts to allege a nexus, or connection, to interstate or foreign commerce by reference to Jiang's 2005–06 "recruit[ment]" of Fan from China to UNR (Compl. ¶¶ 1, 24, 66), as well as his payment of her 2006–08 stipend through "federal grants" (*id.* ¶¶ 4, 24, 66), she may not rely on

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

such factual allegations since they are time-barred for the reasons set forth in Subsection III.A.1 above. Once the time-barred factual allegations are properly dismissed, the Complaint fails to allege a sufficient nexus to out-of-state commerce to state a claim for sex trafficking under TVPA, and thus the entire claim should be dismissed under Rule 12(b)(6) and/or Rule 12(b)(1).

Accordingly, Count I should be dismissed as time-barred and otherwise defective.

**B.      Count II fails to state a federal claim for forced labor insofar as it is time-barred and fails to allege "labor or services" or a nexus to out-of-state commerce.**

Count II alleges forced labor against Jiang under TVPA, 18 U.S.C. § 1589, through TVPRA's civil remedy, 18 U.S.C. § 1595. Compl. ¶¶ 72–79. It fails to state a claim for three independent reasons: (1) it is mostly time-barred; (2) it fails plausibly to allege "labor or services"; and (3) it fails to allege, without time-barred factual allegations, a nexus to out-of-state commerce that is required under the Commerce Clause power by which 18 U.S.C. § 1595 was enacted.

**1.      The forced-labor claim is time-barred.**

Count II for forced labor, like Count I for sex trafficking, is subject to a 10-year statute of limitations. 18 U.S.C. § 1595(c)(1). Thus, the federal forced-labor claim is time-barred insofar as it relies on alleged facts that occurred <u>before October 25, 2011</u> and should be partly dismissed, with prejudice, for this reason.

**2.      The claim also fails to allege "labor or services."**

To establish a forced-labor claim under TVPA, Fan must allege and prove Jiang (1) "knowingly" (2) "provide[d] or obtain[ed] the labor or services" of (3) Fan (4) by means of "force," "physical restraint," "serious harm," "abuse of law or legal process," or threats of the same, or "any scheme, plan, or pattern intended to cause [Fan] to believe that, if [she] did not perform such labor or services, [she] would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). "Labor or services" is undefined. The ordinary meaning of "labor" is "[w]ork of any type," usually referring to "work for wages as opposed to profits." *Labor*, Black's Law

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

Dictionary (11th ed. 2019). The ordinary meaning of "services" is, in the relevant part, "[l]abor performed in the interest or under the direction of others," specifically "the performance of some useful act or series of acts for the benefit of another," usually "for a fee." *Service*, Black's Law Dictionary (11th ed. 2019).

For the 2006–08 timeframe, Fan alleges "labor or services" in the form of babysitting (Compl. ¶¶ 38–39, 74, 76) and fabricating grips (*id.* ¶¶ 40, 41) as possible grounds for her forced-labor claim. However, as set forth above, those factual allegations are time-barred and, therefore, may not serve as grounds for this claim. The claim should be dismissed insofar as it relies on such time-barred allegations of labor or services. For the 2008–15 timeframe, any alleged conduct before October 25, 2011 is likewise time-barred and may not serve as a basis for the forced-labor claim. What is more, this timeframe should be dismissed as a basis for the claim because it is conclusory and should be dismissed as failing to state a claim under the heightened notice pleading standard of *Twombly/Iqbal*. For the 20015–19 timeframe, only alleged "sexual services" during that timeframe remain. Count II therefore should be dismissed insofar as it relies on babysitting, grip-fabricating, or any other allegations of labor or services from 2006–08, any allegations of labor or services from 2008–October 24, 2011, and any such allegations from October 25, 2011–15 that are conclusory and vague.

### 3. The claim also fails to allege a nexus to out-of-state commerce.

Since Fan brings her TVPA claim for forced labor under TVPRA, which was passed under Congress's Commerce Clause power (as set forth in Subsection III.A.3 above), there is an implicit (albeit not explicit) nexus requirement that the alleged labor or services have a connection to interstate or foreign commerce. Just as with the federal sex-trafficking claim, Fan may not rely on time-barred allegations regarding Jiang's 2005–06 recruitment of Fan from China to UNR, or his 2006–08 payment of her stipend through federal grants, to establish such a nexus. Without those time-barred allegations, the Complaint fails to allege a nexus to out-of-state commerce, and the entire federal forced-labor claim should be dismissed under relevant rules.

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

**C.**     **Count III fails to state a claim for servitude trafficking insofar as it is time-barred and fails to allege "labor or services" or a nexus to out-of-state commerce, and also may be stricken as redundant of Count I insofar as it re-alleges sex trafficking.**

Count III alleges servitude trafficking against Jiang under 18 U.S.C. § 1590 through the civil remedy, 18 U.S.C. § 1595. Compl. ¶¶ 80–85. It fails to state a claim for four independent reasons: (1) it is mostly time-barred; (2) it fails plausibly to allege "labor or services"; (3) it fails to allege, without time-barred factual allegations, a nexus to out-of-state commerce that is required under the Commerce Clause power by which 18 U.S.C. § 1595 was enacted; and (4) it may be independently stricken as redundant of Count I insofar as it re-alleges sex trafficking.

**1.     The servitude-trafficking claim is time-barred.**

Count III for servitude trafficking, like Count I for sex trafficking and Count II for forced labor, is subject to a 10-year statute of limitations. 18 U.S.C. § 1595(c)(1). Thus, the federal servitude-trafficking claim is time-barred insofar as it relies on alleged facts <u>before October 25, 2011</u> and should be partly dismissed, with prejudice, for this reason.

**2.     The claim fails to allege "labor or services."**

To establish a servitude-trafficking claim under TVPRA, Fan must allege and prove Jiang (1) "knowingly" (2) "recruit[ed], harbor[ed], transport[ed], provide[d], or obtain[ed]" (3) "by any means" (4) Fan (5) "for labor and services." 18 U.S.C. § 1590(a). Yet again, factual allegations regarding "labor or services" in the form of babysitting or fabricating grips in <u>the 2006–08 timeframe</u> are time-barred, as are alleged "sexual services" from <u>the 2008–15 timeframe</u> that predate October 25, 2011 and similar allegations from that timeframe that are conclusory under *Twombly*/*Iqbal*. Only alleged "sexual services" on or after October 25, 2011, including from <u>the 2015–19 timeframe</u>, remain. Count III therefore should be dismissed insofar as it relies on babysitting, grip-fabricating, or any other allegations of labor or services from 2006–08, any allegations of labor or services from 2008–October 24, 2011, and any such allegations from October 25, 2011–15 that are conclusory and vague.

MAUPIN COX LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mcllawfirm.com

### 3. The claim fails to allege a nexus to out-of-state commerce.

Fan brings her TVPA claim for servitude trafficking under TVPRA, which, as set forth above, imposes an implicit requirement that the alleged servitude trafficking have a nexus to out-of-state commerce. Just as with the federal sex-trafficking and forced-labor claims, Fan may not rely on time-barred allegations of the 2005–06 recruitment of Fan from China (Compl. ¶ 82), or 2006–08 payment of her stipend through federal grants (*id.*), to show a nexus. Without allegations of a nexus, the entire federal servitude-trafficking claim should be dismissed under relevant rules.

### 4. The claim may be independently stricken as redundant.

Even if Fan could somehow allege a nexus to out-of-state commerce for her servitude-trafficking claim, all that would remain of this claim would be alleged "sexual services" from October 25, 2011 to December 2019. The rest is time-barred. Thus, Count III for trafficking in servitude becomes nothing more than a repeat of Count I for trafficking in sex. That is, the labor or services allegedly being trafficked under Count III are, at bottom, the commercial sex acts allegedly being trafficked under Count I. The servitude-trafficking claim is "redundant" of the prior sex-trafficking claim—a needless repetition—and should be stricken under Rule 12(f).

The Court therefore should dismiss Count III insofar as it is time-barred and otherwise fails to state a claim for trafficking in servitude under federal law. Also, insofar as it re-alleges sex trafficking, it may be independently stricken as redundant of Count I.

### D. Count IV fails to state a claim for sex trafficking under Nevada law insofar as it is time-barred and fails to allege "prostitution."

Count IV alleges sex trafficking against Jiang under NRS 201.300 via the civil remedy of NRS 41.1399. Compl. ¶¶ 86–93. It fails to state a claim for two independent reasons: (1) it is mostly time-barred; and (2) it fails plausibly to allege "prostitution."

### 1. This sex-trafficking claim is also time-barred insofar as it relies, heavily, on alleged facts that occurred well before October 25, 2015.

This sex-trafficking claim under Nevada law is subject to a 6-year statute of limitations.

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

1   NRS 171.085(3). As Fan did not file the Complaint until October 25, 2021, the claim is time-

2   barred for all alleged facts <u>before October 25, 2015</u>. This excludes as time-barred all allegations

3   of sexual misconduct in <u>the 2006–08 timeframe</u>, and almost all such allegations in <u>the 2008–15</u>

4   <u>timeframe</u> (all but the last 65 days of 2015 fall outside the limitations period). The only

5   allegations that are not time-barred are those in <u>the 2015–19 timeframe</u> (from October 25, 2015

6   to December 2019). Thus, the Nevada sex-trafficking claim should be mostly dismissed, with

7   prejudice, based on the statute of limitations alone.

8         **2.**    **The claim fails to allege "prostitution" under a reasonable interpretation of**

9                **the term that does not lead to an absurd result, violate the rule of lenity, and**

10                **render NRS 201.300 unconstitutionally overbroad and vague.**

11     To establish a sex-trafficking claim under Nevada law, Fan must allege and prove Jiang

12   (1) "induce[d], recruit[ed], harbor[ed], transport[ed], provide[d], obtain[ed] or maintain[ed]," or

13   "[took], place[d], harbor[ed], induce[d], cause[d], compel[ed] or procur[ed]" by "threats,

14   violence, force, intimidation, fraud, duress, coercion, by any device or scheme, or by abuse of

15   any position of confidence or authority, or having legal charge," (2) Fan (3) "to engage in

16   prostitution, or to enter any place within [Nevada] in which prostitution is practice, encouraged

17   or allowed for the purpose of sexual conduct or prostitution." NRS 201.300(2)(a)(2)–(3); *see also*

18   NRS 41.1399(10)(a).[7] ***Prostitution*** is defined as "engaging in sexual conduct with another person

19   in return for a fee, monetary consideration or other thing of value." NRS 201.295(5).

20     This statute is aimed at prostitution, which is defined more narrowly than a commercial

21   sex act under federal law. Nevada courts have long recognized that where, as here, "general

22   words [in a statute] follow a designation of particular subjects . . . , the meaning of the general

23   words will ordinarily be presumed to be, and construed as, restricted by the particular designation

24   and as including only things . . . of the same kind, class, character, or nature as those specifically

25

26   _____

[7] Provisions referring to "a child," NRS 201.300(2)(a)(1), "marry[ing]," NRS 201.300(2)(a)(4), or "[r]eceiv[ing] anything of value with the specific intent of facilitating a violation of this paragraph," NRS 201.300(2)(a)(5), are not alleged.

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

enumerated." *Orr Ditch & Water Co. v. Just. Ct. of Reno Twp.*, Washoe Cty., 178 P.2d 558, 562 (Nev. 1947). This well-established canon of statutory interpretation, known as *ejusdem generis*, may be seen as a "specific application" of the "broader" interpretive canon of *noscitur a sociis*, for which associated words in a statute bear on one another's meaning so that "it is improper, in construing a statute, to take a few words from its context, and, with them thus isolated, attempt to determine their meaning." *Id.* at 562–63. Against this backdrop, it is quite clear that prostitution does not refer to sexual conduct in return for anything of value, without limitation (other than reasonable limiting principles), but to sexual conduct in return for currency or money as consideration or payment—since the term "other thing of value" in the series "for a fee, monetary consideration, or other thing of value" must be read in light of, and be limited by, the prior terms "fee" and "monetary consideration." *Id.* at 563 ("In accordance with the rule of ejusdem generis, such terms as . . . 'other thing,' . . . when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described.").

Of course, this makes common sense and comports with the plain, ordinary meaning of prostitution, which is sex for money. *Prostitution*, Black's Law Dictionary (11th ed. 2019) (defining prostitution as "[t]he practice or an instance of engaging in sexual activity for money or its equivalent"). No reasonable person would consider prostitution to apply to a situation where a boss and employee, or teacher and adult student, have sex. The mere fact that a power imbalance may exist between the boss and employee, or teacher and adult student, does not, by itself, transform the sexual conduct between them into prostitution. Courts across the country have long recognized this simple but important point. In *Tisdale v. State*, for example, a Texas court considered the following hypotheticals:

> **Example No. 1.** A husband and wife are reaching the end of another day, the husband suggests a little sex before falling asleep, the wife states that she is not in the mood for sex, the conversation goes on to what the wife did during the day, she saw a new dress on a shopping trip, the husband offers to buy the dress for the wife if she submits to his request for sex, the wife decides to do so. Are these people guilty of Prostitution?

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mcllawfirm.com

17

**Example No. 2.** A young man meets a young woman and in the course of conversation suggests a romantic dinner by candle light in his apartment with the obvious inference that the evening should end in his bedroom, if the young lady accepts his offer, is she a Prostitute?

**Example No. 3.** An attorney from Dallas has a case to argue before the Court of Criminal Appeals in Austin, his plans are to spend the night in Austin prior to his court appearance the next morning. He invites his young lady friend to accompany him on the trip, she knows full well that his invitation includes sleeping in the same bed and engaging in sexual relations. Are these people guilty of Prostitution?

**Example No. 4.** A secretary becomes friendly with her boss, so friendly in fact that they wind up in the same bed together, as a direct result of their affection she receives a raise in pay. Are these people guilty of Prostitution?

**Example No. 5.** A young woman who is dating a young lawyer receives a traffic citation, she requests that her friend represent her in connection with this legal matter. In the course of their evening together they engage in sexual relations, the traffic citation is dismissed and the young woman is never billed for legal services rendered. Are these people guilty of Prostitution?

*Tisdale v. State*, 640 S.W.2d 409, 415 n.2 (Tex. App. Ct. 1982).

The court's answer to each question was "no." It sensibly concluded such "hypothetical situations do not persuade us that the term 'fee' is to be understood to include virtually any type of exchange between parties," and applied a "narrow construction" to prostitution. *Id.* at 415; *see also Summers v. Anchorage*, 589 P.2d 863, 868 (Alaska 1979) (noting acceptance of $100 for sex falls squarely within meaning of prostitution); *People v. Johnson*, 376 N.E.2d 381, 384 (Ill. App. Ct. 1978) (noting prostitution applies to monetary consideration and not just any form of valuable consideration, and does not reach sexual acts in context of social companionship and gift giving); *cf. People v. Braddock*, 809 N.E.2d 712, 718 (Ill. App. Ct. 2004) (holding statute prohibiting solicitation for prostitution does not apply to a "request for an expensive gift," or the like, in exchange for sex and makes illegal only an "offer to purchase a sex act").

To treat the alleged interaction between Jiang, as teacher, and Fan, as adult student, as prostitution would be to stretch the Nevada statute beyond proper recognition and would lead to an absurd result—all the more so for the alleged interaction between Jiang, as academic mentor and Tenure Committee member, and Fan, as tenure-track professor. Indeed, since the 2006–08

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

1  <u>timeframe</u> is time-barred, the teacher–student relationship is not at issue, only the alleged boss–

2  employee relationship from <u>the 2015–19 timeframe</u> is. And that does not rise to the level of

3  prostitution since, according to the Complaint itself, Jiang never offered to purchase sex from

4  Fan. There was no exchange of money, or the like, for sex. Instead, Jiang allegedly coerced Fan

5  into having sex based on power over her tenure and reputation. That is not prostitution. Further,

6  for reasons set forth in Subsection III.A.2, if there were any ambiguity, it would have to be

7  resolved in favor of Jiang under the rule of lenity and in keeping with constitutional principles.

8       Notably, based on judicially noticeable facts, the alleged 2015–19 relationship between

9  Jiang, as a senior tenured professor, and Fan, as a then junior tenure-track professor (she is now

10  a tenured professor), was far less akin to a boss–employee relationship of "superior-subordinate"

11  status, and far more akin to a peer–to–peer relationship between coworkers of much more equal

12  status. Fed. R. Evid. 201(b)(2). Based on the bylaws of UNR, tenure is a multi-step process in

13  which the Tenure Committee in the Department of Mechanical Engineering is just one step

14  among many, and Jiang was but one member among others.[8] In any event, for purposes of this

15  Motion, the bottom line here is that the relationship between Jiang and Fan, as alleged in the

16  Complaint, is a far cry from prostitution within the meaning of Nevada law.

17       Thus, the Court should dismiss Count IV insofar as it is time-barred and, independently,

18  because it fails to state a Nevada sex-trafficking claim since it does not and cannot allege the

19  essential element of prostitution.

**E.**    **Count V fails to state a claim for involuntary servitude under Nevada law insofar as**

21      **it is time-barred and fails plausibly to allege "labor or services."**

22       Count III alleges involuntary servitude against Jiang under NRS 200.463 via the civil

23  remedy of NRS 41.1399. Compl. ¶¶ 94–98. It fails to state a claim for two independent reasons:

---

[8] For information on the tenure process, see Article 3 on "Faculty Personnel Policies," Section 4 on "Tenure," of the Bylaws of the University of Nevada, Reno, https://www.unr.edu/faculty-senate/university-bylaws/university-bylaws#2_organization (last visited December 6, 2021), and Article 3 on "Tenure" of the College of Engineering Bylaws, https://www.unr.edu/faculty-senate/university-bylaws/college-of-engineering#organization (same).



MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mcllawfirm.com

(1) it is almost entirely time-barred; and (2) it fails plausibly to allege "labor or services."

### 1. The involuntary-servitude claim is time-barred.

Involuntary servitude under Nevada law is subject to a 3-year statute of limitations. *See* NRS 171.085(4) ("Any felony other than the felonies listed in subsections 1, 2 and 3 must be found, or an information or complaint filed, within 3 years after the commission of the offense."). Thus, since Fan did not file the Complaint until October 25, 2021, this claim is time-barred insofar as it relies on alleged facts <u>before October 25, 2018</u> and should be almost entirely dismissed, with prejudice, for this reason.

### 2. The claim fails to allege "labor or services."

To establish an involuntary-servitude claim under Nevada law, Fan must allege and prove Jiang (1) "knowingly" (2) "subject[ed], or attempt[ed] to subject" (3) Fan (4) "to forced labor or services" (5) by "[c]ausing . . . physical harm to [her]," "[p]hysically restraining [her]," "[a]busing . . . the law or legal process," "[c]ausing . . . financial harm to [her]," or threatening to do any of the above. NRS 200.463(1)(a)-(c), (f); *see also* NRS 41.1399(10)(a).[9] Time-barred factual allegations of "labor or services" include all allegations of servitude in <u>the 2006–08 timeframe</u>, all such allegations in <u>the 2008–15 timeframe</u>, and almost all such allegations in <u>the 2015–19 timeframe</u> (all but the year or so from October 25, 2018 to December 2019). Only alleged "sexual services" on or after October 25, 2018 remain. Count V therefore should be dismissed insofar as it relies on babysitting, grip-fabricating, or any other allegations of labor or services from 2006–08, or any allegations of labor or services from 2008–October 24, 2018.

### F. Count VI fails to state a claim for intentional infliction of emotional distress under Nevada law insofar as it is time-barred and precluded by the litigation privilege.

Count VI alleges IIED against Jiang under Nevada common law. Compl. ¶¶ 99–102. It fails to state a claim insofar as it is time-barred and precluded by the litigation privilege.

---

[9] Provisions about "knowingly destroying, concealing, removing, confiscating or possessing any actual or purported passport or other immigration document," NRS 200.463(1)(d), or "extortion," NRS 200.463(1)(e), are not alleged.

MAUPIN COX LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

*First*, the IIED claim is mostly time-barred. To establish an IIED claim, Fan must allege and prove (1) Jiang engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (2) Fan "suffered severe or extreme emotional distress," and (3) "actual or proximate causation" between the conduct and distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). The claim is subject to a 2-year statute of limitations. NRS 11.190(4)(e). Since Fan did not file the Complaint until October 25, 2021, the claim is time-barred for all alleged facts before October 25, 2019. This excludes as time-barred all allegations in the 2006–08 timeframe, all allegations in the 2008–15 timeframe, and almost all allegations in the 2015–19 timeframe (all but the two months or so from October 25, 2019 to December 2019). All that remains are thin allegations of "rape" and "threats" since October 25, 2019. Compl. ¶ 101. Thus, the IIED claim should be mostly dismissed with prejudice.

*Second*, insofar as the IIED claim relies, through incorporation by reference (*id.* ¶ 99), on Jiang's cease-and-desist letter (*id.* ¶ 56), related protection-order application (*id.* ¶ 61), and resulting protection-order proceeding (*id.*), it is precluded by the litigation privilege. *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832, 841–42 (noting the absolute litigation privilege is often applied to defamation claims but also applies to other tort claims, like IIED claims); *see Williams v. Lazer*, 495 P.3d 93, 100 (Nev. 2021) (citing with approval *Borowski*, *supra*, for the proposition that "the absolute litigation privilege [applies] to non-defamation torts like . . . intentional infliction of emotional distress"). Protection-order proceedings, as well as conduct related to the same, should be protected under the absolute litigation privilege as "judicial," or at least "quasi-judicial," proceedings. *Lazer*, 495 P.3d at 100 ("[F]or purposes of the absolute privilege, a proceeding must, at a minimum, (1) provide the opportunity to present and rebut evidence and witness testimony, (2) require that such evidence and testimony be presented upon oath or affirmation, and (3) allow opposing parties to cross-examine, impeach, or otherwise confront a witness.").

Thus, the IIED claim should be dismissed insofar as it is time-barred and improper.

MAUPIN | COX | LEGOY
ATTORNEYS AT LAW
4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

**G.**     **Count VII fails to state a claim for defamation under Nevada law insofar as it is time-barred and precluded by the litigation privilege.**

Count VII alleges defamation *per se* against Jiang under Nevada common law. Compl. ¶¶ 103–105. It fails insofar as it is time-barred and precluded by the litigation privilege.

***First***, it is time-barred under the 2-year statute of limitations for defamation claims. NRS 11.190(4)(c). As with the IIED claim above, the defamation claim should be dismissed for all allegations <u>before October 25, 2019</u>.

***Second***, insofar as it relies, through incorporation by reference (*id.* ¶ 103), on Jiang's cease-and-desist letter (*id.* ¶ 56), related protection-order application (*id.* ¶ 61), and resulting protection-order proceeding (*id.*), it is precluded by the litigation privilege for the same reasons set forth in Section III.F above. *Spencer v. Klementi*, 466 P.3d 1241, 1247 (2020) (noting the absolute litigation privilege protects statements made in judicial or quasi-judicial proceedings so that "those statements cannot form the basis of a defamation claim").

The defamation claim should be dismissed insofar as it is time-barred and improper.

**H.**     **Counts IV–VII, in addition to Counts VIII–IX, should be dismissed as state-law claims that substantially predominate over the federal-law claims.**

For the reasons set forth in Part I above, the Court should dismiss the state-law claims under Rule 12(b)(1) since they "substantially predominate[]" over the federal claims in both type and number. 28 U.S.C.A. § 1367(c)(2); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) (stating that, where state claims constitute "the real body of a case," they "may fairly be dismissed"); *Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir.2008) (stating survival of a federal claim does not require retaining jurisdiction over seven state-law claims).

**IV.     CONCLUSION**

For the foregoing reasons, the Court should dismiss and strike the claims (or portions of claims) of the Complaint under Rules 12(b)(1), 12(b)(6), and 12(f).

///



MAUPIN | COX | LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com

22

1    DATED: December 6, 2021.

2                                            MAUPIN, COX & LEGOY

3                                            By: __/s/ Enrique R. Schaerer_____
                                                 Enrique R. Schaerer, Esq.
4
                                             Attorneys for Defendant Yanyao Jiang
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## **CERTIFICATE OF SERVICE**

2       I HEREBY CERTIFY that I electronically filed the foregoing document(s) with the Clerk

3   of the Court using the CM/ECF system, which will send notification of such filing to the

4   following and all attorneys of record:

5

6       Ryan J. Cann, Esq.
        Nevada Bar No. 11073
7       CANN IP LAW PLLC
        1 East Liberty Street, Suite 600
        Reno, Nevada 89501
8       775-234-3796 Telephone
        info@canniplaw.com
9       *Attorney for Plaintiff Feifei Fan*

10      Courtney Miller O'Mara, Esq. (No. 10863)
        Kelly E. Peters, Esq. (No. 15762)
11      Fennemore Craig, P.C.
        7800 Rancharrah Parkway
12      Reno, Nevada  89511
        Tel:  (775) 788-2228  Fax:  (775) 788-2229
13      comara@fennemorelaw.com
        kpeters@fennemorelaw.com
14      *Attorney for Defendant Wei Wu*

15      DATED: December 6, 2021.

16

17                          _/s/ Enrique R. Schaerer_____
                                    EMPLOYEE

18

19

20

21

22

23

24

25

26



4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mcllawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

FEI FEI FAN v. YANYAO JIANG and WEI WU

United States District Court Case No.: 3:21-cv-00458-MMD-CLB

Index of Exhibits to Motion To Dismiss and/or To Strike

| Exhibit | Document | No. Pages |
|---------|----------|-----------|
| 1 | July 20, 2020 Cease-and-Desist Letter | 1 |
| 2 | February 11, 2021 Application for Temporary Protection Order, February 11, 2021 Order Granting the Same, March 30, 2021 Decision Continuing Extended Protection Order Hearing and Temporary Protection Order, and April 29, 2021 Decision Denying Extended Protection Order Without Prejudice | 8 |



MAUPIN COX LEGOY
ATTORNEYS AT LAW

4785 Caughlin Pkwy
Reno, Nevada 89519
(775) 827-2000
www.mclawfirm.com