**MOT**

Courtney Miller O'Mara, Esq.
Nevada State Bar No. 10683
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV  89511
Phone:  (775) 788-2205
Fax:      (775) 788-2206

Enrique Schaerer, Esq.
Nevada State Bar No. 11706
FENNEMORE CRAIG, P.C.
9275 W Russell Road | Suite 240
Las Vegas, NV  89148
Phone:  (702) 692-8013
Fax:      (702) 692-8099
*Attorneys for Defendants*

# DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FEIFEI FAN, <br><br> Plaintiff, <br><br> vs. <br><br> YANYAO JIANG and WEI WU, <br><br> Defendants. | Case No.: 3:21-cv-00458-ART-CLB |

## <u>DEFENDANT YANYAO JIANG AND WEI WU'S</u>

## <u>MOTION FOR SPOLIATION SANCTIONS</u>

Defendants Yanyao Jiang ("Jiang") and Wei Wu ("Wu") (collectively, "Defendants"), by and through their counsel of record, Enrique Schaerer and Courtney O'Mara, of Fennemore Craig, P.C., move for spoliation sanctions against Plaintiff Feifei Fan ("Fan"). Defendants bring this Motion under Federal Rules Civil Procedure ("FRCP") 37 and the Court's inherent authority.

1

COMARA/28274063.1/060502.0001

## I.      Background

Defendants incorporate herein by reference their Motion to Compel (ECF #40), including the factual background therein. Here, at issue are Wu's Requests for Production (**Ex. 1**) and Jiang's first Requests for Production (**Ex. 2**), as well as Fan's corrected Answers to Wu's Requests for Production (**Ex. 3**) and Fan's corrected Answers to Jiang's first Requests for Production (**Ex. 4**). In response to each of Wu's Requests for Production Nos. 1–9 and 11, Fan stated, in relevant part:

(A)     "Plaintiff cannot fully comply with [this] Request . . . because some documents are no longer in the possession and control of Plaintiff";

(B)     "WeChat communications between Plaintiff and Defendant Jiang were deleted by Plaintiff in late spring 2020"; and

(C)     "Text messages between Plaintiff and Defendant Jiang were deleted by Plaintiff in summer 2021 after Plaintiff emailed UNR Title IX relevant evidence."

**Ex. 3**, at 1–5.

Fan made the very same statements, in boilerplate fashion, in response to each of Jiang's Requests for Production Nos. 1, 4–7, and 10–23, adding: "The documents submitted to UNR Title IX are hereby produced as Plaintiff documents bates numbers FF000050 to FF000063; some parts of the submission for Title IX were produced as Plaintiff documents bates numbers FF000033 to FF000049 and therefore are already in Defendants' possession." **Ex. 4**, at –11. Fan's production FF000033–FF000049 is attached as **Exhibit 5**.

At the August 16, 2022 case management conference with Judge Baldwin, counsel for Fan agreed to see about whether any of the deleted evidence could be recovered. But, to date, none of the deleted evidence has been recovered and produced. Following the conference counsel met and conferred about the topic and Fan's counsel promised to follow up by September 23, 2022 with an update about recovery efforts, but the promised update never came and Mr. Cann stopped responding for a month. **Ex. 6, Ex. 7** (Declaration). Defendants' counsel follow up on October 20, 2022. (**Ex. 8**.) A response was received the next day (**Ex. 10**), when Mr. Cann promised to follow up by 10 A.M. and then 5 P.M. on October 24, 2022, but broke his promises yet again. (**Ex. 11**.)

Significantly, Fan's statements about deleting WeChat communications and text messages between Fan and Jiang are clear admissions of spoliation, as set forth below. Moreover, Fan's production of selected WeChat communications and text messages between Fan and Jiang in no way remedies this blatant instance of spoliation regarding highly significant evidence, especially given Fan's allegations that Jiang fabricated WeChat communications between them. That Fan cherry-picked WeChat communications and text messages between them to provide to UNR's Title IX officer is by no means a substitute for the production of all WeChat communications and text messages between Fan and Jiang. What is more, Fan's self-admitted deliberate deletion of WeChat communications and text messages is highly suspicious—all the more so given (1) the relevant timeline of Fan's Title IX complaint and the protection-order proceedings that followed closely on its heels and (2) Fan's serious allegation in the context of protection-order proceedings that Jiang had simply fabricated WeChat communications between Fan and Jiang. The Complaint (ECF #1) alleges that Fan filed her Title IX complaint against Jiang with UNR on January 29, 2021 (Compl. ¶ 60), that Jiang applied for a protection order against Fan on February 11, 2021 (*id.* ¶ 61), and that "Jiang fabricated WeChat messages" in his application for a protection order (*id.*), which application was served on Fan on or about February 28, 2021. Conveniently for Fan, and highly suspiciously for any neutral, outside observer, Fan decided to delete relevant and important evidence of the WeChat communications and text messages against Jiang after Fan filed her Title IX complaint—precisely after putting that evidence at issue in her Title IX complaint. That makes no sense, other than to hide the existence on her phone of the very WeChat communications between Fan and Jiang that Fan alleges are fabricated.

There is a very simple, common-sense explanation for Fan's spoliation of such important evidence precisely at the time that she knew or should have known that it was potentially relevant to the Title IX proceedings, not to mention the protection-order proceedings that immediately ensued thereafter and the Complaint that she herself threated and brought in these proceedings. There is no question that Fan anticipated litigation between her and Jiang. As early as July 20, 2020, and well before she filed her Title IX complaint and deleted WeChat communications and

3

text messages between her and Jiang, Fan threatened Jiang with a lawsuit: "With respect to your year 06 rape and the afterward sexual relationship between you as an adviser and me as a student, we will find lawyers to deal with." **Ex. 9** (YG000001–YG000200), at YG000058. On this score, the record could not be clearer.

Federal law anticipates this scenario, in which a party acting in bad faith may well resort to spoliation of evidence that could harm her case, and provides a mechanism for addressing and punishing such bad behavior with spoliation sanctions, including but not limited to an adverse inference and the shifting of attorneys' fees and costs to the guilty party. Here, Defendants rely on that law and seek those very sanctions against Fan for her transparent, self-admitted spoliation.

**II.     Standard**

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *LaJocies v. City of N. Las Vegas*, No. 2:08-CV-00606-GMN, 2011 WL 1630331, at *1 (D. Nev. Apr. 28, 2011). The party alleging spoliation has "the burden to prove by a preponderance of the evidence that the accused party actually destroyed, altered, or failed to preserve relevant evidence." *U.S. E.E.O.C. v. Wedco, Inc.*, Case No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, *2 (D. Nev. Sept. 15, 2014). A party engages in spoliation "if they had some notice that the documents were 'potentially relevant' to the litigation before they were destroyed." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991). In other words, a party "must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *United States v. Kitsap Physicians Servs.,* 314 F.3d 995, 1001 (9th Cir.2002). It is worth noting that this sets forth "an objective standard that asks not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Perrong v. Sperian Energy Corp.*, No. 219CV00115RFBEJY, 2020 WL 6287723, at *7 (D. Nev. Oct. 27, 2020). Thus, the duty to preserve not only arises during litigation, "but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *LaJocies*, 2011 WL 1630331, at *1.

4

Significantly, since "the relevance of . . . [deleted/destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). Bearing this important point in mind, the Court may sanction a party for spoliation of evidence under FRCP 37, its inherent authority, or both. *LaJocies*, 2011 WL 1630331, at *2. The Court applies federal law, like FRCP 37, when addressing issues of spoliation of evidence. *Id.* The Court also has "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993). This arises from the Court's inherent power to "'manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *LaJocies*, 2011 WL 1630331, at *2 (quoting *In re Napster, Inc. Copyright Litigation,* 462 F. Supp. 2d 1060, 1072 (N.D. Cal. 2006)).

The Court has "broad authority" to sanction Fan for destroying or losing the WeChat communications and text messages between Fan and Jiang in different ways. *Id.* at *4.

First, it may instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *Id.* at *3 (citing *Glover*, 6 F.3d at 1329). Such an inference is "'an instruction to the trier of fact that 'evidence made unavailable by a party was unfavorable to that party.'" *Id.* at *4 (quoting *Lewis v. Ryan,* 261 F.R.D. 513, 521 (S.D. Cal. 2009)). The rationale for this adverse inference is twofold, one evidentiary and the other focused on deterrence. On the *evidentiary* rationale, it is widely understood that "a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Akiona,* 938 F.2d at 161. On the *deterrence* rationale, "[a]llowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Id.* Significantly, "a finding of bad faith is not a prerequisite for an adverse inference." *Id.* (citing *Glover*, 6 F.3d at 1329). While a party's destruction of evidence need not be in bad faith for sanctions to be imposed, "the party's motive or degree of willfulness or fault is relevant to the severity of the sanction to be imposed." *Id.*

///

1    Second, the Court may exclude witness testimony, including from the party responsible

2 for destroying the evidence, based on the destroyed evidence and proffered by that party. *Id.* at *3

3 (citing *Glover*, 6 F.3d at 1329). Third, the Court may dismiss that party's claim if she "has engaged

4 deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Id.*

5 (citing *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir, 2006)). Finally, the Court may

6 also issue civil contempt sanctions to compensate the opposing party for the violation, including

7 assessing attorneys' fees and costs. *Id.*

**III.  Discussion**

9    Here, Defendants easily carry their burden to prove by a preponderance of the evidence

10 that Fan actually destroyed relevant evidence. In her responses to Wu's discovery requests, and

11 again in her responses to Jiang's requests, Wu repeatedly admitted that she deleted WeChat

12 communications and text messages between Fan and Jiang. While she has produced her Title IX

13 complaint with selected WeChat communications and text messages—that is, ones that she cherry-

14 picked and presented in isolation, with little, if any, context—this does not constitute preservation

15 of relevant evidence. Just the opposite: She admits that she deleted the full sweep of the WeChat

16 communications and text messages between Fan and Jiang—communications and messages that

17 are highly relevant and important to the claims and defenses in this case.

18    Next, Fan cannot argue that she lacked notice that the WeChat communications and text

19 messages were potentially relevant to litigation before she deleted them. After all, she claims that

20 she deleted them precisely after filing a Title IX complaint in January 2021 that put all of those

21 communications and messages, among other interactions between Fan and Jiang, squarely at issue.

22 Moreover, Jiang's application for a protection order against Fan came close on the heels of the

23 Title IX complaint in February 2021, around the very time Fan would have been deleting the

24 communications and messages and then turning around and alleging in the protection-order

25 proceedings that certain of those communications and messages were fabricated by Jiang. This is

26 most suspicious. What is more, and even more to the point, Fan threatened Jiang with litigation

27 over their past relationship as early as July 2020, well before the filing of Fan's Title IX complaint

28 in January 2021 and Jiang's application for protection order in February 2021. From this record,

6

it is crystal clear that Fan was on notice that the communications and messages that she was deleting were potentially relevant to litigation, including litigation contemplated by Fan herself. Not only would a reasonable person have known the potential relevance—thereby satisfying the objective legal standard—but Jiang submits that Fan herself did, in fact, know of that relevance. Thus, there is no question that Fan committed spoliation and, worse, the timing and sequence of events set forth above suggests that Fan did so in bad faith—that is, to destroy evidence damning to her allegations in the context of not only her Title IX complaint and Jiang's application for protection order, but also this very litigation that she contemplated well beforehand. Although bad faith is not required in order for this Court to impose spoliation sanctions, Fan's apparent motive, degree of willfulness, and fault are relevant and weigh heavily in favor of the most severe sanction.

That is, the Court has discretion to dismiss Fan's claims against Jiang, as well as her claims against Wu, for intentionally deleting WeChat communications and text messages between Fan and Jiang before instituting this lawsuit. Not only are those communications and messages highly relevant—even indispensable—to the claims and defenses regarding Jiang, but they are also relevant to the claims and defenses regarding Wu. After all, Fan alleges that she was in reasonable apprehension of Wu because Jiang warned Fan in communications and messages to protect herself against Wu—a preposterous claim for an assault in which Wu simply knocked on Fan's door and then left at Fan's request. They are likewise relevant to Fan's claim for intentional infliction of emotional distress against Wu, in addition to Jiang. Thus, it is within the Court's broad discretion to put an end to this litigation here and now, especially given the complete and utter failure of Fan and her counsel to prosecute this case and follow up on Wu's and Jiang's basic discovery requests, as detailed in their separate Motion to Compel that is filed concurrently with this Motion.

At a minimum, the Court should order an adverse inference against Fan, and it should also require Fan and her counsel, jointly and severally, to pay Wu and Jiang's attorneys' fees and costs in bringing this Motion. Under the adverse inference, Fan should not be allowed to argue that WeChat messages between Fan and Jiang that have been produced by Jiang were fabricated. Whereas Jiang has preserved that electronically stored information, Fan has, by her own admission, intentionally deleted it. As further evidence of her bad faith, Fan did so precisely at a

COMARA/28274063.1/060502.0001

critical moment of escalation in her campaign to humiliate Defendants and ruin their lives. The adverse inference should also instruct the jury that Fan threatened the lives of Wu and Jiang and their family, that Fan admitted that she had fabricated claims of non-consensual sex, sex trafficking, forced labor, and trafficking in servitude against Jiang, that Fan admitted that she was terribly upset because Jiang had ended the longtime on-off consensual relationship between Fan and Jiang, and that Fan admitted that she had emotional problems and had lost her grip with reality.

In summary, Defendants respectfully request the following jury instruction with respect to the deleted WeChat communications and text messages between Fan and Jiang:

> In this case, Defendant Yanyao Jiang has introduced evidence of WeChat communications and text messages between Plaintiff Feifei Fan and Defendant Yanyao Jiang. The Court instructs you to find as a matter of law the following:
>
> 1.   The WeChat communications and text messages introduced by Defendant Yanyao Jiang are authentic, true, and correct.
>
> 2.   Those WeChat communications and text messages do not include any warning from Defendant Yanyao Jiang to Plaintiff Feifei Fan that Plaintiff Feifei Fan should protect herself against Defendant Wei Wu.
>
> 3.   Those WeChat communications and text messages include death threats from Plaintiff Feifei Fan against Defendants Yanyao Jiang and Wei Wu.
>
> 4.   Those WeChat communications and text messages include admissions by Plaintiff Feifei Fan that she had fabricated or otherwise made up claims of non-consensual sex, sex trafficking, forced labor, and trafficking in servitude against Defendant Yanyao Jiang.
>
> 5.   Those WeChat communications and text messages include admissions by Plaintiff Feifei Fan that she was terribly upset because Defendant Yanyao Jiang had ended their longtime on-off consensual relationship.
>
> 6.   Those WeChat communications and text messages include admissions by Plaintiff Feifei Fan that she had emotional problems and had lost her grip with reality.

Defendants also respectfully ask the Court to require Fan and her counsel, individually and severally, to pay Defendants' attorneys' fees and costs incurred in bringing this Motion.

## IV.   Conclusion

For the foregoing reasons, Defendants respectfully ask for the following relief:

1.   A jury instruction requiring an adverse inference against Fan, if this matter ever gets to trial, along the lines set forth in the discussion above.

8

1  2. An order requiring Fan to pay Defendants' attorneys' fees and costs incurred in
2  connection with bringing this Motion.
3  3. For such further relief as the Court may deem fair and just.
4  DATED: October 24, 2022.

**FENNEMORE CRAIG, P.C.**

*/s/ Enrique Schaerer*
_____

Courtney Miller O'Mara
Enrique Schaerer
FENNEMORE CRAIG, P.C.

*Attorneys for Defendants*

**EXHIBIT INDEX**

| | | |
|---|---|---|
| 1. | Wu's First Set of Requests for Production | 8 pages |
| 2. | Jiang's First Set of Requests for Production | 12 pages |
| 3. | Fan's corrected Answer to Wu's First Set of Requests for Production | 8 pages |
| 4. | Fan's Answer to Jiang's First Set of Requests for Production | 15 pages |
| 5. | FF000033–FF000049 | 18 pages |
| 6. | Declaration of Courtney Miller O'Mara | 2 pages |
| 7. | Declaration of Enrique Schaerer | 2 pages |
| 8. | October 20, 2022 Email from Courtney Miller O'Mara | 7 pages |
| 9. | YG000001–YG000200 | 201 pages |
| 10. | October 21, 2022 Email from Ryan Cann | 9 pages |
| 11. | October 24, 2022 Email from Ryan Cann | 11 pages |

FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511

COMARA/28274063.1/060502.0001

## **CERTIFICATE OF MAILING**

I HEREBY CERTIFY that I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following and all attorneys of record:

Ryan J. Cann, Esq.
Nevada Bar No. 11073
CANN IP LAW PLLC
1 East Liberty Street, Suite 600
Reno, Nevada 89501
775-234-3796 Telephone
info@canniplaw.com
*Attorney for Plaintiff Feifei Fan*

DATED: October 24, 2022.

*/s/ Trista Day*
_____
Trista Day, an employee of Fennemore Craig, P.C.

11

COMARA/28274063.1/060502.0001