1

2

3

4

5

6                      **UNITED STATES DISTRICT COURT**

7                            **DISTRICT OF NEVADA**

8

9   FEI FEI FAN,

10               Plaintiff,                    Case No. 3:21-CV-00458-RCJ-CLB

11   v.                                                    **ORDER**

12   YANYAO JIANG and WEI WU,

13               Defendants.

14

15         Fei Fei Fan ("Fan") brings this Action against Yanyao Jiang ("Jiang") for an alleged sex

16   trafficking scheme that the Jiang put her through. Jiang asks this Court to dismiss the Action for

17   failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court grants Jiang's

18   request and will dismiss Fan's action for failure to state a claim. For that reason, the Court will

19   dismiss Fan's Motion for Writ Attachment. (ECF No. 4).

20   ///

21   ///

22   ///

23   ///

24   ///

1

## FACTUAL BACKGROUND

2

3

4

5

6

7

8

This case arises from an affair that Jiang had with Fan while Jiang was married to Wu. (ECF No. 1 at 1). Sometime in 2006, Fan came to the U.S. from China to earn her master's degree from the University of Nevada, Reno ("UNR"). (*Id*.) Fan came to the U.S. on an F1 student visa and worked as a student employee under Jiang, who was a tenured Associate Professor in the Mechanical Engineering Department at UNR. (*Id*.) Fan not only worked under Jiang, but he also served as her thesis advisor for her master's degree, so the two spent a good amount of time together. (Id. at 4).

9

10

11

12

13

14

15

16

17

Fan alleges that Jiang created a hostile workplace environment for F1 students. (*Id*. at 4). Allegedly, Jiang intimidated his student employees to strike fear in their hearts that they would lose their status as a researcher and a student, which would strip them of their F1 status. (*Id*.) This allegedly made matters worse for Fan because her family could not support her, so she was reliant on the stipend that Jiang paid her. (*Id*. at 4-5). Without a way to afford her lifestyle or stay in the U.S., Fan allegedly became completely subordinate to Jiang. (*Id*. at 4). Jiang allegedly abused this relationship and forced Fan to go beyond her role as a research assistant to watch Jiang's children. (*Id*. at 6). Fan alleges that Jiang recognized the subordination and forced Fan to enter into a sexual relationship in the fall of 2006. (*Id*. at 1-2).

18

19

20

21

22

23

24

Fan alleges that Jiang "raped and abused Fan sexually and emotionally" during her master's studies. (*Id*. at 2). While she was earning her master's degree, Fan alleges that Jiang used his position of power to sexually abuse and rape her because he knew that she could not speak up. (*Id*. at 4-5). Fan alleges that Jiang gave her chlamydia in 2007, but she allegedly did not provide his identity to the health clinic out of fear that she would expose Jiang's abuse. (*Id*. at 6). Fan left UNR in 2008, but she alleges that Jiang still initiated and insisted on cyber sex "and Jiang ignored Fan's crying during sexual intercourse." (*Id*. at 7).

When Fan decided to return to UNR, she was on an H1 visa as a tenure-track Assistant Professor in the Mechanical Engineering Department. (*Id*. at 7). As an H1 visa holder, Fan needed to remain employed at UNR to stay in the U.S. (*Id*.) Jiang was allegedly assigned as Fan's mentor and tenure committee supervisor, allegedly creating the same type of subordinate relationship ripe for abuse. (*Id*.) The sexual abuse allegedly continued until Fan approached Jiang and threatened to report the abuse in 2019. (*Id*.)

Fan received permanent residency in April of 2020, at which time she decided to inform Wu of Jiang's abuse. (*Id*. at 8). Jiang allegedly responded with a threat of "physical harm after learning that Fan sent Wu" a text message informing her of Jiang's alleged abuse. (*Id*.) In May of 2020, Wu allegedly "confronted Fan by outrageously knocking at the door of Fan's apartment." (*Id*.) Fan did not open the door because she allegedly feared Wu would physically harm her, even though Wu had made not threat to do so. (*Id*.) Fan threatened to call 911 and Wu left Fan's apartment building. (*Id*.)

Fan alleges that Jiang continued to threaten Fan in May of 2020. (*Id*. at 8-9). Allegedly, "Jiang notified Fan over the phone that Wu hated Fan … that Fan needed to protect herself from physical harm … [that] Wu wanted to sue Fan for sexual bribery … [and that] Wu would notify [the] [t]enure [c]ommittee." (*Id*.) In July of 2020, Jiang and Fan allegedly met at a park to discuss the situation and Jiang continued to threaten Fan. (*Id*.) Later that month, Jiang's attorney allegedly sent Fan a cease-and-desist letter. (*Id*. at 9). In August of 2020, Jiang allegedly berated Fan for the situation outside of her office at UNR.[1] (*Id*.) Fan further alleges that Jiang threatened to end her life "via text, via phone, and via a recently retired" professor. (*Id*.) "On January 29, 2021, Fan filed a Title IX complaint against Jiang with UNR." (*Id*.)

---

[1] The complaint makes no mention of Fan reporting this behavior to the police even though Fan was questioned weeks prior in an investigation of someone vandalizing Jiang's office. (ECF No. 1 at 9).

Jiang filed a request for a protective order against Fan shortly after Fan filed the Title IX complaint. (*Id.* at 9). Jiang alleged that Fan vandalized his office, Fan was mentally unstable, Fan purchased a gun with nefarious intent, and the sexual relationship was consensual. (*Id.*) The protective order was not granted, but Fan alleges that the process damaged Fan's professional reputation, employment opportunities, and psychological condition. (*Id.* at 9-10). Fan alleges that Jiang also slandered Fan in the workplace. (*Id.* at 10).

In October of 2021, Fan brought this Action against Jiang for alleged sex trafficking under federal and state law, forced labor under federal law, trafficking into servitude under federal and state law, intentional infliction of emotional distress under state law, and defamation under state law. (ECF No. 1). Jiang and Wu both moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 5, 7).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case, making a violation "plausible," not just

"possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory, but also must allege the facts of the plaintiff's case so that the court can determine whether the plaintiff has any basis for relief under the legal theory the plaintiff has specified or implied, assuming the facts are as the plaintiff alleges. *Id*. The Court may dismiss or strike a claim with prejudice where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted).

## ANALYSIS

Fan fails to allege facts sufficient to give rise to a claim upon which relief can be granted. Jiang's alleged conduct, while morally reprehensible, does not meet the legal standard for forced labor and sex trafficking. Fan's federal causes of action are improper, leaving purely state law claims. For that reason, the Court will dismiss the action against Jiang for failure to state a claim and lack of subject matter jurisdiction. (ECF No. 1). Accordingly, the Court will dismiss the Motion for Writ Attachment because it is moot. (ECF No. 4).

### I.    Sex Trafficking

Fan claims that Jiang engaged in sex trafficking from the time that Jiang recruited Fan to UNR in 2006, to when she left campus in 2008. 18 U.S.C. § 1591. The conduct at issue here is not sex trafficking and it occurred outside the statute of limitations.

Under the federal statute prohibiting sex trafficking, plaintiffs must bring an action alleging a "commercial sex act" with a connection to "interstate or foreign commerce." *Id*. The definition of "commercial sex act" includes "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Congress noted that "trafficking in persons is

not limited to the sex industry," and that "traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models." Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000).

### A. 2006 to 2008 Conduct

Under the 12(b)(6) liberal standards, Jiang engaged in a "commercial sex act" from 2006 to 2008. Fan alleges that Jiang hired her in 2006 and agreed to pay her wages. (ECF No. 1 at 10-11). The complaint's allegations do not make it clear whether he said she needed to perform sexual acts for the wages. In fact, the complaint's language leaves the Court wondering if Fan even asserts that Jiang mandated sex acts in exchange for wages. The complaint states that Jiang "paid for Fan's sexual services during work time using federal grants." (*Id*.) The Court reads that to mean that she performed sex acts while she was on the clock, so she was paid for them. Under that reading, she was not forced to perform the sex acts for money, instead, she simply performed sex acts while being paid.

It is also unclear whether she was forced to perform the sex acts or if she was in a consensual relationship with Jiang. She alleges that she was abused but her allegations leave some doubt to whether that is true. In the complaint, she states that she left UNR from 2008 to 2015. Fan does not state why she left UNR or if it was related to the alleged sexual abuse, but it became clear during the hearing on this Motion that she left to get her doctorate in Georgia. After receiving her doctorate in Georgia, she decided to return to work under Jiang at UNR, even though she alleges that he had essentially held her immigration status hostage some years earlier. While the Court must take the allegations as true, the facts of this case make Fan's claims questionable.

However, giving Fan the benefit of the doubt at the motion to dismiss stage, Fan states that the subordinate relationship caused her to believe that she needed to perform the acts to continue

receiving the wages he provided. The Court draws the inference that this belief could have created the fear that she needed to perform the sex acts for her wages. Because the complaint pleads "factual content that allows the court to draw the reasonable inference" that Jiang mandated the sex acts for the wages, the sexual acts were "commercial" sex acts. *Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Although these were commercial sex acts, Fan's allegations of sex trafficking fall outside of the applicable statute of limitations. Actions brought under the federal sex trafficking statute must be brought within "10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). Fan alleges that Jiang engaged in sex trafficking starting when he raped her from 2006 to 2008, so the clock started to run from that point. Fan brought this action in October of 2021, which is 13-15 years after the alleged sex trafficking started and five years after the statute of limitations ended. Accordingly, Fan's sex trafficking claim for the 2006 to 2008 sex acts falls outside of the statute of limitations.

The Court must address Fan's argument that the statute of limitations does not apply to the earlier conduct and should apply to the later conduct. Fan points to *Roe v. Howard*, to show that federal courts allow sex trafficking actions to proceed when the sex acts occurred beyond the statute of limitations but extended into the statute of limitations. No. 1:16-cv-562 (E.D. Va. Jan 3, 2018). First, the facts of that case are strikingly different. The plaintiff in *Roe* engaged in sex acts in 2007 and brought the action in 2016. *Roe v. Howard*, 917 F.3d 229, 237 (4th Cir. 2019). Second, there was no conduct that occurred outside of the statute of limitations. *Id*. Fan has no response to these glaring factual issues, nor can she provide additional facts to cure the challenged pleading. Therefore, the Court will dismiss Count I as to the 2006 to 2008 conduct with prejudice.

   *B.   2008 to 2015 Conduct*

Fan alleges that "Jiang initiated and insisted (cyber-)sex with Fan occasionally, and Jiang ignored Fan's crying during sexual intercourse" from 2008 to 2015. (ECF No. 1 at 7). Fan does not provide the Court with any facts to support the inference that this was a commercial sex act because she does plead facts showing that anyone received anything of value.[2] 18 U.S.C. § 1591(e)(3) (requiring a commercial sex act for a finding of sex trafficking). The complaint states that Fan left Reno and graduated from UNR, so she was no longer receiving wages for her work. (*Id.*) Jiang no longer had any influence over academic career because she was studying in Georgia, so she was no longer receiving value in the form of an education. Without any basis to believe that anyone received anything of value, the Court dismisses Count I as to the 2008 to 2015 conduct with prejudice.

### C. 2015 to 2018 Conduct

Finally, Fan alleges that she moved back to Reno to work at UNR as a tenure-track Assistant Professor on an H1 temporary worker visa and Jiang continued to sexually assault her. The complaint does not allege any facts giving rise to the belief that she engaged in commercial sex acts because nobody received anything of value. 18 U.S.C. § 1591(e)(3) (requiring a commercial sex act for a finding of sex trafficking). Fan alleges that she worked with Jiang at UNR during this time, but she does not allege that he had the ultimate authority over whether she kept her job. As opposed to the sex acts performed from 2006 to 2008, Jiang did not have the authority to unilaterally fire her and she could not have believed that he had the power because she points out that three other people sat on her tenure committee. Essentially, Fan did not receive immigration status or wages for the 2015 to 2018 sex acts because Jiang did not have the authority

---

[2] There is also a question of whether these are sex acts. Fan does not state that Jiang initiated and forced cybersex, so that presumably was not a sex act. It is also unclear what Fan means when she says that she cried during intercourse because she was in Georgia and he was in Nevada. Fan does not plead any facts showing that their relationship continued in person from 2008 to 2015.

to take them away or the authority to provide them to her. Additionally, although Fan received an education, Jiang had no influence over her ability to receive the education.[3] Therefore, neither Fan nor Jiang received anything of value from the sex acts. The Court dismisses Count I altogether with prejudice.

## II.   Forced Labor

Fan's complaint alleges three separate instances of forced labor: (1) babysitting from 2006 to 2007, (2) physical sex from 2006 to 2008, and (3) physical sex from 2015 to 2019. The Court assumes, without deciding, that the babysitting and the physical sex from 2006 to 2008 meet the standard for forced labor. Similar to the sex trafficking claim, the babysitting and the physical sex from 2006 to 2008 fall out of the applicable 10-year statute of limitations for a forced labor claim because the claims arose in 2006. 18 U.S.C. § 1595(c)(1). All that remains is the physical sex from 2015 to 2019.

The prohibition on forced labor comes from the Trafficking Victims Protection Act ("TVPA"), which Congress enacted to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106–386, § 102, 114 Stat. 1488 (2000)). Congress reauthorized provisions of the TVPA to enhance protections for victims of trafficking and to allow for a private right of action for victims. *Id*.

---

[3] Fan alleges that Jiang sat on Fan's tenure committee and Jiang got Fan hired at UNR. (ECF No. 1 at 7). Three other people sat on Fan's tenure committee. (*Id*.) Jiang's vote alone did not have the power to end her academic career and Fan does not allege that he had influence over the other members of the committee. Further, Fan provides no facts to support the allegation that Jiang was the reason that Fan got hired. Instead, she undermines the idea that Jiang got her hired, stating that Jiang "brainwash[ed]" Fan into thinking that Jiang got her hired. (*Id*.)

Under the TVPA, plaintiffs must show that the defendant knowingly provided or obtained labor or services from a person:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. §§ 1589(a). The statute does not define labor or services. Blacks Law defines "labor" as "work for wages as opposed to profits," and "services" as "[l]abor performed in the interest or under the direction of others." *Labor, Services*, Black's Law Dictionary (11th ed. 2019).

The physical sex from 2015 to 2019 did not constitute forced labor in violation of the TVPA. Fan alleges that she believed "that if [she] withheld sex from Jiang, [she] would suffer harm and damage on her visa, schooling prospects, stipend, degree, and employment." (ECF No. 1 at 12). Fan's allegations fall under the fourth means of forced labor that the TVPA prohibits. 18 U.S.C. §§ 1589(a)(4). Under that section, Fan must show that she believed she would suffer serious harm if she did not perform the labor. *Id*. "Serious harm" requires a showing of a threat of physical or nonphysical harm that would compel a reasonable person with the same background and in the same circumstances to perform or continue performing labor to avoid incurring such harm. 18 U.S.C. §§ 1589(c)(2).

Fan could not have believed that she would incur serious harm if she did not perform sex acts for Jiang.[4] As discussed previously, Fan knew that Jiang did not have the

---

[4] The Court assumes, without making a finding, that the sex acts were "labor or services" under the TVPA.

authority to terminate her or to ruin her attempt to become a tenured professor, so she could not have believed that she would suffer "serious harm" in violation of the act. Fan knew that Jiang did not have the authority so he could not have damaged her "visa, schooling prospects, stipend, degree, and employment." (ECF No. 1 at 12).

Further, allowing this action to go forward on the basis of the physical sex from 2015 to 2019 under the TVPA would run afoul of the Act's purpose. As mentioned previously, the TVPA seeks to protect trafficking victims. The Ninth Circuit found that the TVPA seeks "to combat the modern-day strategies by which traffickers exercise power over their victims." *United States v. Barai*, 55 F.4th 1245, 1251 (9th Cir. 2022). Fan left UNR in 2008 after graduating, went to Georgia to get her doctorate, and chose to come back to UNR to work with Jiang. Fan does not try to explain why she chose to return to a workplace with an alleged sexual abuser who allegedly caused her serious physical and psychological harm even though she just received a doctorate from a different university. The Court believes that the omission of Fan's explanation is telling. The Court finds that Fan is hardly the type of plaintiff that the TVPA seeks to protect. Accordingly, the Court will dismiss Count II with prejudice.

### III.     Trafficking Into Servitude

Fan brings the trafficking into servitude claim in conjunction with the sex trafficking and forced labor claims. This claim relies on 18 U.S.C. § 1590, which provides "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter" shall be found guilty. Because the Court dismissed the claims for sex trafficking and forced labor, Fan can no longer bring this claim. The Court dismisses Count III with prejudice.

### IV.     State Law Claims

This Court does not have jurisdiction over the case because Fan invoked jurisdiction under federal law and there are no federal claims remaining. *See* 28 U.S.C. § 1331. Diversity jurisdiction does not exist either because both parties are residents of Nevada. 28 U.S.C. § 1332(a)(2) (diversity of citizenship does not exist when a citizen of a foreign state is "lawfully admitted for permanent residence in the United States and . . . domiciled in the same State" as the U.S. citizen). Accordingly, Fan's state law claims (Count IV, V, VI, VII) against Jiang are dismissed. Because this Court previously dismissed all claims against Wu, this Action is dismissed in its entirety.

V.      **Writ of Attachment**

The Court dismisses Fan's Motion for Writ of Attachment because it is moot. (ECF No. 4).

**CONCLUSION**

IT IS HEREBY ORDERED that Jiang's Motion to Dismiss is **GRANTED**. (ECF No. 7).

IT IS FURTHER ORDERED that Fan's Motion for Writ of Attachment is **DENIED** as moot. (ECF No. 4).

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is **DENIED** as moot. (ECF No. 93).

IT IS FURTHER ORDERED that Fan's complaint is **DISMISSED** with prejudice. (ECF No. 1). The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated this 9th day of September 2023.

_____
ROBERT C. JONES
United States District Judge