UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FEI FEI FAN,

    Plaintiff,

vs.

YAN YAO JIANG and WEI WU,

    Defendants.

Case No. 3:21-cv-00458-RCJ-CLB

**ORDER**

Pending before the Court is Defendant Wei Wu's Motion for Attorney's Fees and Costs, (Dkt. 109). On September 9, 2023, this Court dismissed with prejudice Plaintiff Fei Fei Fan's claims against both Defendants. (Dkt. 107); (Dkt. 108). In the Order dismissing the claims against Wu, the Court "sanction[ed] Fan and her counsel for bringing this frivolous action against Wu," ordering that both "Fan and her counsel shall pay Wu's attorney['s] fees." (Dkt. 108 at 6). Accordingly, after careful review of the pending motion, (Dkt. 109), response, (Dkt. 119), and reply, (Dkt. 121), the Court **GRANTS** Wu's Motion for Attorney's Fees and Costs and finds that Defendant Wu is owed $84,462.21.

**I.     Background**

This case arises from an affair that Defendant Yan Yao Jiang had with Plaintiff Fan while Jiang was married to Defendant Wu. (Dkt. 1 at 1). In October 2021, Fan brought this Action against Jiang for alleged sex trafficking under federal and state law, forced labor under federal law, trafficking into servitude under federal and state law, intentional infliction of emotional distress

under state law, and defamation under state law. (*See id.*). Jiang and Wu both moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), (Dkt. 5); (Dkt. 7), which the Court granted first in a ruling on the bench, (Dkt 88), and then later in formally issued Orders. (Dkt. 107); (Dkt. 108).

At the hearing held on May 1, 2023, (Dkt. 88), the Court found that "[t]he Action that Fan and her counsel brought against Wu is not only frivolous but an abuse of judicial process" because "[t]he facts that make up the allegations provide no basis for the Court to find that Wu did anything wrong." (Dkt. 108 at 6). The Court noted its concern, in particular, about the fact that "Fan's counsel, Ryan J. Cann, decided to file this Action and name Wu as a defendant." (*Id.*). Accordingly, in an Order issued by the Court on September 9, 2023, the Court memorialized its "ruling on the bench sanctioning Fan and her counsel," ordering that they *both* "shall pay Wu's attorney['s] fees." (*Id.*). Having established that Wu is entitled to recover fees and costs in this case, the only remaining question for the Court is the amount to which Wu is entitled.

Wu is now "seeking the recovery of all attorneys' fees and costs incurred by Ms. Wu in this matter in the total amount of $84,462.21."[1] (Dkt. 109 at 2). She has provided a summary of her itemized fees, (*id.* at 4–7), the details of which are contained in an exhibit attached to her motion. (*See* Dkt. 109-1). She has also provided a declaration from Courtney Miller O'Mara, the "Director at Fennemore Craig, P.C., counsel for Defendants … in this matter," in support of her motion. (Dkt. 109-2 at 2). It is important to note at the outset that, early on in this litigation,

---

[1] Wu notes that "the total amount of fees and costs incurred [] and sought via this [motion] has been reduced so that it does not include amounts already awarded[.]" (Dkt. 109 at 2). In the reduction are the amounts awarded by this Court to Defendants, collectively, on February 23, 2023, (Dkt. 68), and August 29, 2023, (Dkt. 105). Accordingly, "because Ms. Wu has already been awarded her share of $8,005.69 in attorneys' fees and costs in this matter" pursuant to those previous rulings, "that amount was subtracted from the total fees and costs … and is not included in the amount sought[.]" (Dkt. 109 at 2).

Defendants Wu and Jiang "entered a joint-defense agreement so that their respective counsel could coordinate regarding matters of common interest for the defense." (Dkt. 109 at 3). While each party maintained their own, individual file with counsel, they also shared a separate, joint file which was billed only for "general defense tasks or tasks pertaining to discovery or motion practice germane to the defense of both defendants." (*Id.*). By agreement of Defendants and their counsel, "[t]he joint file is billed 40% to Ms. Wu and 60% to Mr. Jiang[.]" (*Id.*).

## II.   Legal Standard

Once it is established that a party is entitled to attorney's fees and costs, the court must then determine the proper amount owed to ensure the award is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). In the Ninth Circuit, "[t]he customary method of determining fees … is known as the lodestar method," which "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997) *Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

It is the prevailing party's burden to "submit[] billing records to establish that the number of hours it has requested are reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Hensley*, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). Counsel for the prevailing party "is not required to record in great detail how each minute of his time was expended," and can sufficiently meet this burden "by simply listing his hours and

identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (cleaned up) (quoting *Hensley*, 461 U.S. at 437 n.12).

"[W]hen determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). And courts look to "evidence supporting the hours worked and rates claimed" to determine whether the number of hours expended were reasonable. *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id*; *see also Gonzalez*, 729 F.3d at 1204 n.4 ("[I]f the fee applicant submits billing records that are so poorly organized that the district court cannot practically rely on them to determine a reasonable number of hours, the district court may hold the applicant to its burden in several ways.").

Importantly, the lodestar figure enjoys a "strong presumption" of reasonableness, but it can be "enhanced or reduced in 'rare and exceptional cases.'" *Fischer*, 214 F.3d at 1119 n.4 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)); *Morales*, 96 F.3d 363 n.8 ("There is a strong presumption that the lodestar figure represents a reasonable fee. 'Only in rare instances should the lodestar figure be adjusted on the basis of other considerations.'" (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994))). Considering that some "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely," courts can exclude from the lodestar amount those hours unreasonably expended. *Hensley*, 461 U.S. at 434. But "[t]he product of reasonable hours times a reasonable rate does not end the inquiry" because courts must also consider "the important factor of 'results obtained'" and the complexity of the case. *Id.* at 434–36 (explaining that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" and

the importance of this principles "in complex civil rights litigation involving numerous challenges to institutional practices or conditions"); *see also Morales*, 96 F.3d at 364 (explaining that district courts are "obligated to consider" the extent of a party's success).

More formally, these considerations have been coined the *Kerr* factors. After calculating the lodestar figure, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales*, 96 F.3d at 363–64 (citing *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)). The twelve *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 363 n.8 (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976)); *see also* LR 54-14(a)(3). Ultimately, "[t]here is no precise rule or formula for making these determinations," so "[t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37; *see also Morales*, 96 F.3d at 362.

### III.   Analysis

Wu is seeking recovery in the total amount of $84,462.21. (Dkt. 109 at 2). She argues that that amount "is reasonable in light of the work performed by her counsel and her counsel's qualifications," and that "the circumstances do not warrant a reduction in the total fee award." (*Id.*

at 8, 8–17). In response, Fan raises seven objections to Wu's request, (*see generally* Dkt. 119), and the Court will address each objection in turn.[2]

First, without explicitly making an argument on the issue, (Dkt. 119 at 2), Fan alludes to the fact that the claims in this case were unsuccessful and recites legal authority which states that "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 435 (quoting *Davis v. Cnty. of Los Angeles*, 8 E.D.P. ¶ 9444, at 5049 (C.D. Cal. 1974)). He continues his reliance on *Hensley* by reciting that "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." (Dkt. 119 at 2) (quoting *Hensley*, 461 U.S. at 435). Wu argues, in reply, that this reliance "is misplaced and does not aid her argument," (Dkt. 121 at 2), and the Court agrees. In context, the Supreme Court in *Hensley* is discussing cases in which *plaintiffs* are seeking attorney's fees—not *defendants*—and Wu is correct that, as a defendant, her request for attorney's fees "is entirely unrelated and inapposite to a plaintiff's request for attorneys' fees on an unsuccessful claim[.]" (*Id.*). And the Court has already found that she is entitled to attorney's fees for Fan's unsuccessful claims, so this implicit objection fails. (Dkt. 108 at 6).

Second, noting the Court's May 1, 2023 statement on the bench that it "*intends* to grant" Wu's motion to dismiss, (Dkt. 88) (emphasis added), Fan argues that "[h]ours billed <u>after</u> the case against Defendant Wu was dismissed cannot be considered to be reasonable under a lodestar

---

[2] Fan raises no objection to the reasonableness of the hourly rates charged by Wu's counsel. (*See generally* Dkt. 119). Having reviewed the hourly rates billed to Wu, (*see* Dkt. 109-2 at 6–7), the Court is satisfied that the rates are reasonable.

analysis." (Dkt. 119 at 3) (emphasis in original). In reply, Wu argues that "an oral ruling is not an enforceable order, and [she] could not assume what specific order would ultimately issue nor could she simply stop participating in the case as she remained a party." (Dkt. 121 at 3). Moreover, she notes that "Plaintiff cites no authority that suggests Ms. Wu's work on the case from May 1, 2023 to September 9, 2023 was unnecessary, beyond her general citation to *Hensley v. Eckerhart* indicating that excessive, redundant, and unnecessary hours should be excluded from a fee request." (*Id.*). For these reasons, the Court is not persuaded by Fan's second objection. But, importantly, Wu is incorrect insofar as her assertion about the effect of oral orders. Had the Court issued a formal ruling on the bench granting Wu's motion to dismiss, thereby dismissing the case against Wu, the oral ruling would have been binding absent a written order, but that is not what the Court did. On May 1, 2023, the Court stated only its *intent* to grant Wu's motion to dismiss. (*See* Dkt. 88). The Court did not actually do so until it issued the Order granting dismissal on September 9, 2023, (Dkt. 108). *See United States v. Medjuck*, 937 F. Supp. 1368, 1372 (N.D. Cal. 1996) ("The Court is aware that statements of individual judges during an oral argument are not binding in any way."). So, Wu remained a party to this case until the claims against her were ordered dismissed on September 9, 2023, and Fan offers no authority in support of her claim that attorney's fees accrued during that time should be excluded from the lodestar figure.

Third, Fan challenges a July 2023 invoice relating to a deposition, whose testimony Fan claims "was only relevant to the claims against [Jiang]," arguing that it should be excluded from the lodestar amount as unrelated and unnecessary for Wu's defense. (Dkt. 119 at 4). Wu contends that Fan is "incorrect" because the "testimony would have been relevant for a number of reasons, including the fact that Plaintiff was not actually afraid of Ms. Wu and did not actually suffer severe

emotional distress as alleged." (Dkt. 121 at 4).  Noting that "[r]elevance is a broad standard as it relates to discovery," Wu explains that, at the deposition, her counsel asked "questions regarding [the deponent's] knowledge of certain [] posts that Plaintiff made relating to Ms. Wu," as well as questions "regarding an email Plaintiff sent to [the deponent] regarding Ms. Wu and Mr. Jiang involving [the deponent] in the lawsuit." (*Id.*).  The Court agrees that "this deposition testimony would have been relevant to [Wu's] defense," (*id.*), and declines to deduct the invoice from the lodestar figure.

Fourth, Fan challenges an August 2023 invoice relating to attendance at a hearing that she claims was "to discuss discovery issues related to Jiang" alone because "the Wu case had already been entirely dismissed from the bench[.]" (Dkt. 119 at 4).  Wu reiterates that, despite the Court's statement at the May 1 hearing, she was still a full party to the case with claims asserted against her and, regardless, "[t]he hearing related to discovery disputes [and] was germane to the defense of both Wu and Jiang." (Dkt. 121 at 4).  She explains that had she and Jiang not agreed to a joint representation arrangement, her counsel "still would have needed to attend the hearing," so "these costs should be awarded." (*Id.* at 5).  The Court agrees with Wu.  At the time of the hearing, Wu remained a party to this case, and, considering the outlandishness of Fan's litigation tactics thus far, Wu's attendance at the discovery hearing remained necessary and germane to her defense until she was actually dismissed as a party.

Fifth, Fan claims that Wu "improperly include[d] costs … for airfare related to a deposition of Plaintiff Fei Fei Fan that did not occur." (Dkt. 119 at 5).  Wu explains that her counsel had already booked a flight and, due to continued scheduling issues, incurred an expense which, she argues, should be included in the lodestar figure. (Dkt. 121 at 5).  It is unclear whether Wu's

1 counsel took a loss on this flight or whether her counsel retains a flight credit from the cancellation 2 that can be used at a later time.  But the issue is ultimately irrelevant because the invoice reflecting 3 the flight expense, No. 1158716, was reduced[3] by an amount larger than the objected to flight 4 expense, and therefore the cost has essentially already been excluded from the total amount 5 requested.  (Dkt. 109 at 5); (Dkt. 109-1 at 120–37).  Thus, the Court is not persuaded by this 6 objection.

7 Sixth, Fan makes a general allegation that the lodestar figure "should be lowered to account 8 for unnecessary overstaffing" by Wu's counsel on her case. (Dkt. 119 at 5).  As support for this 9 argument, Fan notes that "at times" there were up to four attorneys billing for Wu's case at one 10 time, and "[b]y comparison, Plaintiff has utilized only one attorney for the case." (*Id.* at 5–6).  Wu 11 responds to this argument by pointing out that Fan "fails to cite to any invoice or entry that shows 12 a duplication of effort, excessive hours billed, redundant work, or any other basis for a reduction 13 in the amount billed," and explains that her "counsel made efforts to minimize time billed by more 14 experienced attorneys with higher billable rates … [by] utilizing attorneys with lower billable rates 15 where possible." (Dkt. 121 at 6) (emphasis removed).  Moreover, she argues that "the fact that 16 Plaintiff hired one attorney, who operates as a solo practitioner, to prosecute her case is hardly 17 relevant to [her] choice of counsel" and "does not suggest that efforts were duplicated or [that] 18 overstaffing occurred" in her case. (*Id.* at 5–6).  Lastly, Wu asserts that "Plaintiff also fails to 19 acknowledge that Ms. Wu's counsel secured a complete dismissal of the lawsuit with prejudice,"

---

[3] Wu notes that the invoices from her counsel contain "several courtesy discounts" given to her "over the course of providing legal services," which are already reflected in the total amount requested in the pending motion. (Dkt. 109 at 12).

(*id.* at 6), a consideration which is certainly relevant to the Court's determination of the amount owed. *See Morales*, 96 F.3d at 364; *Hensley*, 461 U.S. at 434–36. The Court is not persuaded that this is one of the rare and exceptional cases in which unnecessary overstaffing warrants a reduction in the presumptively reasonable lodestar figure provided by Wu's counsel.

Finally, Fan asserts that the 40% of hours billed to Wu on Defendants' joint file is "unreasonable" because, considering the *Kerr* factors, it "does not properly align with the time and labor required in comparison to the claims against Defendant Jiang." (Dkt. 119 at 6). Arguing that "Jiang's case is very different than [Wu's]," Fan argues that "it is clear" from the Complaint that "the causes of action against Jiang constitute more than 60% of the claims and much more than 60% of the required 'time and labor'" in this case.[4] (*Id.*). Assuming that "the causes of action were all of a relatively equal complexity," by Fan's math, "Wu should be awarded 33% of the jointly billed hours and costs[.]" (*Id.*). Moreover, Fan argues that "not all of the causes of action in Plaintiff's complaint are of equal complexity," and, notably, "Wu's causes of action are simple, are based on common law, and all stem from a single incident occurring on May 12, 2020 that was not repeated," unlike Jiang's causes of action which "are based upon complex federal and state statutes and stem from repeated actions occurring over the course of 15 years." (*Id.* at 7). Ultimately, Fan concludes that "[a]n award of 10% of the joint billed hours plus costs would be

---

[4] Fan explains that "Defendant Wu was listed as a defendant for 3 of the 9 causes of action," and "Defendant Jiang was listed as defendant for 7 of the 9 claims." (Dkt. 119 at 6). Therefore, according to Fan, simply by "[l]ooking at the complaint in this light, Defendant Wu was listed as a defendant for only approximately 33% of the causes of action and Jiang was listed as a defendant for approximately 78% of the causes of action." (*Id.*).

more appropriate considering the vast gulf between the complexity and required legal resources" for the two defenses. (*Id.*).

In reply, Wu first argues that "[i]n sharing the allocation of fees, Ms. Wu has likely been billed an amount lower than she would have been billed had she continued with separate counsel from the beginning of this litigation." (Dkt. 121 at 6). This is the case, according to Wu, because had she had "separate counsel, Ms. Wu would have been billed at 100% for the same effort and would have paid 100% of the costs" for work that could have been done jointly, instead of the 40% that she did pay. (*Id.*). Importantly, Wu points out that the 40% figure reflected in her request is not simply a random amount that Defendants along with their counsel believe she is owed but, in reality, reflects the amount that she was actually "billed" and ultimately "paid in defending this lawsuit." (*Id.* at 7). Wu also argues that although her claims "may have been of different complexity, that does not mean she was not required to defend this lawsuit with the same dedication and vigor as Mr. Jiang," nor does that prove that "the time and labor spent was unreasonable" for her defense. (*Id.*). Noting that Fan offers no "supporting case authority," she asserts that an award of 10% "would be unjustified in this case" because the exceptional circumstances required to rebut the lodestar figure are not present. (*Id.*). The Court agrees.

The decision to bill "general defense tasks or tasks pertaining to discovery or motion practice germane to the defense of both defendants," (Dkt. 109 at 3), to a joint file, for which Wu was only charged 40%, created efficiency and necessarily lowered the lodestar figure. Wu is correct that, had those general tasks been billed separately to each Defendant's file, she "would have been billed at 100% for the same effort and would have paid 100% of the costs," and, as a result of the joint file arrangement, she ended up only paying a fraction of that. (Dkt. 121 at 6).

This arrangement also serves to benefit Plaintiff—who is not at risk of being double charged in the event that both Defendants seek attorney's fees for work germane to both of their cases. But, most importantly, the Court is not persuaded by Fan's argument, in reliance on the *Kerr* factors, that this case is so exceptional as to require the Court "to adjust the lodestar downward from the 40% of the joint billed hours plus costs that Defendant Wu requests." (Dkt. 119 at 7). The 40% billed to Wu is, therefore, the proper metric to use when determining the joint file's contribution to the lodestar figure in Wu's case. *See Morales*, 96 F.3d 363; *Hensley*, 461 U.S. at 433.

Finding reasonable in this case both the number of hours expended by counsel and the hourly rates used by counsel, the Court holds that the lodestar figure is $84,462.21. The Court further finds that there are no exceptional circumstances in this case warranting a reduction of this presumptively reasonable lodestar figure. *See Pennsylvania*, 478 U.S. at 565.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant Wei Wu's Motion for Attorney's Fees and Costs, (Dkt. 109), is **GRANTED**. Defendant Wu is entitled to $84,462.21 in attorney's fees and costs against both Plaintiff Fan and her counsel.

IT IS SO ORDERED.

Dated  March 20, 2024

_____
ROBERT C. JONES
United States District Judge