UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEI FEI FAN,<br><br>                Plaintiff,<br>    v.<br>YAN YAO JIANG,<br><br>                Defendant. | Case No. 3:21-cv-00458-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

Following remand from the United States Court of Appeals for the Ninth Circuit, Plaintiff Fei Fei Fan is pursuing a "forced labor claim under 18 U.S.C. § 1589(a)(4) for the 2015-2019 period" and related state-law claims against Defendant Yan Yao Jiang. (ECF No. 125 ("Memorandum") at 3-5; *see also* ECF No. 130 (executing the Ninth Circuit's mandate).)[1] Before the Court are: (1) Jiang's motion for judgment on the pleadings (ECF No. 165 ("Motion"))[2]; and (2) several objections that Fan filed to pretrial orders issued by United States Magistrate Judge Craig S. Denney (ECF Nos. 187, 195, 200, 224). As further explained below, the Court will mostly grant the Motion because portions of Fan's claims are time barred consistent with the Memorandum and overrule Fan's objections.

**II.    DISCUSSION**

The Court first addresses the Motion and then Fan's pending objections.

///

---

[1] Judge Robert C. Jones issued the orders addressed in the Memorandum. (ECF No. 125; *see also* ECF Nos. 107, 108.) Judge Jones later issued an order granting former Defendant Wei Wu's motion for attorneys' fees and costs in the amount of $84,462.21 "against both Plaintiff Fan and her counsel." (ECF No. 122.) This case was reassigned to the Court after Judge Jones issued that order on fees and costs (ECF No. 124) but before the Ninth Circuit issued the Memorandum (ECF No. 125).

[2] Fan responded (ECF No. 182) and Jiang replied (ECF No. 185).

**A.     The Motion**

For each claim on which the Ninth Circuit has permitted Fan to proceed on remand, Jiang seeks to limit its potential temporal scope based on the Memorandum and the pertinent statutes of limitations and makes alternative arguments as to why each claim should be dismissed, either in part, or in its entirety. (ECF No. 165.) The Court agrees with Jiang that the prospective temporal scope of Fan's claims must be limited based on the Memorandum but finds Jiang's alternative arguments for dismissal mostly unpersuasive. Like Jiang did in his Motion, the Court addresses the parties' arguments on a claim-by-claim basis below.

But before it does that, the Court addresses several general arguments that Fan raises in response to the Motion. (ECF No. 182.) For example, Fan argues that Jiang's Motion is premature because Fan should first be given more opportunities to conduct discovery (*id.* at 4), but Jiang's Motion complies with Judge Denney's operative scheduling order (ECF No. 142), and as Jiang argues in reply (ECF No. 185 at 2-3), the Motion properly focuses on Fan's allegations in her Complaint under Fed. R. Civ. P. 12(c); it is not a motion for summary judgment filed under Fed. R. Civ. P. 65.

Fan also argues that it is generally improper to resolve statutes of limitations arguments on a Rule 12(c) motion like the Motion, particularly because she has alleged continuing violations of her rights. (ECF No. 182 at 2-7.) However, Jiang persuasively replies that the Ninth Circuit's Memorandum largely forecloses this general argument. (ECF No. 185 at 1-3.) The Ninth Circuit found that, "the limitations issue was apparent on the face of the complaint, and Fan has not pleaded a continuity of Jiang's 2006–2008 conduct extending into the statutory period," and accordingly affirmed dismissal of her federal claims based on conduct that occurred during that initial period when Fan was a graduate student studying under Jiang at the University of Nevada, Reno ("UNR"). (ECF No. 125 at 2-3.) Indeed, following remand, Fan is only proceeding on a federal forced labor claim, "for the 2015–2019 period." (*Id.* at 3.) There is accordingly little room under the rule of mandate for Fan's argument that she can proceed on her claims to the extent

they are based on conduct the Ninth Circuit already found falls outside the statute of limitations, whether on a continuing violations theory or otherwise. To the contrary, her forced labor claim must be based on conduct that occurred during "the 2015–2019 period" or more recently. (*Id.*) Moreover, the Ninth Circuit's finding that limitations issues are clear from the face of the Complaint renders unpersuasive Fan's reliance on *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) ("Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'"). (ECF No. 182 at 6.) The Ninth Circuit's Memorandum implicitly forecloses the applicability of the equitable tolling doctrine to Fan's claims.

Fan also argues the Motion reflects serial, improper, and sanctionable conduct on Jiang's part. (*See generally* ECF No. 182.) But as noted, there is nothing procedurally improper about Jiang's Motion, so the Court will proceed to address his arguments raised in it below, keyed to Fan's claims.[3]

### 1. Forced Labor

Jiang first argues this claim is time-barred to the extent it is based on conduct that occurred before October 25, 2011, because the Ninth Circuit found in the Memorandum that a ten-year statute of limitations applied to all of Fan's federal claims.[4] (ECF No. 165 at 3-4.) Fan does not raise any argument more specific than the general one mentioned above as to Jiang's statute of limitations argument regarding this claim. (ECF No. 182.) The Court agrees with Jiang.

---

[3] It is true that the Court denied two motions Jiang filed after the Ninth Circuit issued its Memorandum but before Judge Denney issued a new scheduling order (ECF Nos. 128, 130, 131, 132) and overruled Jiang's objection to Judge Denney's decision to reopen discovery (ECF No. 148), but the Court has not previously ruled on the merits of Jiang's arguments presented in the Motion. And as noted, the Motion complies with the operative scheduling order. The Court accordingly rejects Fan's assertions that it was somehow improper of Jiang to file the Motion.

[4] Jiang mistakenly refers to the forced labor claim as Count I (ECF No. 165 at 3), but Fan listed her forced labor claim as Count II in her Complaint (ECF No. 1 at 11-12). The Ninth Circuit affirmed dismissal of Fan's federal sex trafficking claim (ECF No. 125 at 2-4), which Fan labelled Count I in her Complaint (ECF No. 1 at 10-11). The Court addresses the forced labor claim in this section.

Because the Ninth Circuit found the ten year statute of limitations applies to Fan's forced labor claim under 18 U.S.C. § 1589(a)(4), her forced labor claim cannot proceed based on any conduct that occurred before October 25, 2011. (ECF No. 125 at 2-4.)

Jiang otherwise argues this claim should be dismissed to the extent it is based on any conduct from the 2008-15 timeframe described in the Complaint because there is only one conclusory paragraph in the Complaint regarding her interactions with Jiang during that time, when she was not in Reno. (ECF No. 165 at 4.) Fan counters that, while concise, these allegations reflect a pattern of coercion during that time, and requests leave to amend to the extent the Court disagrees. (ECF No. 182 at 2-3.) The Court agrees with Jiang but will grant Fan leave to amend this claim.

In finding Fan had plausibly alleged this claim to the extent it arose from conduct covering the 2015-19 time period, the Ninth Circuit focused on her allegations "that Jiang caused her 'serious harm' in that he brainwashed her into believing he was responsible for her employment, and 'caused [her] to believe that if [she] withheld sex from [him], [she] would suffer harm and damage on her visa, schooling prospects, stipend, degree, and employment.'" (ECF No. 125 at 3.) This same reasoning is inapplicable to Fan's forced labor claim to the extent it is based on conduct that occurred between 2008-15 because Fan did not work for Jiang at that time and was not even in Reno. (ECF No. 1 at 7.) While alarming, Fan's allegation in paragraph 42 of her Complaint does not plausibly allege forced labor because Fan does not allege she was working for Jiang at the time, much less that he forced her to work for him. (*Id.*) The Court accordingly dismisses Fan's forced labor claim to the extent it is based on conduct that occurred between 2008-15.

But the Court grants Fan leave to amend this claim within 30 days if she wishes. However, any allegations in any amended complaint she files must only discuss conduct that occurred on October 25, 2011, or more recently, consistent with the Court's findings above. Moreover, any amended allegations must be pertinent to Fan's forced labor claim

under 18 U.S.C. § 1589(a)(4).[5] The Ninth Circuit affirmed dismissal of her other federal claims. (ECF No. 125 at 2-3.) In deciding to grant her leave to amend, the Court considers that Fan is proceeding pro se, has not previously been granted leave to amend, and her original complaint was filed back in 2021 by counsel that she later parted ways with, unhappy with the services he provided. The Court further finds, liberally construed, that Fan's allegations in paragraph 42 could conceivably be consistent with a forced labor claim given significantly more elaboration. In sum, the Court grants Fan leave to amend this claim as specified herein.

## 2. Sex Trafficking

As to Fan's sex-trafficking claim under Nevada law, Jiang argues it is time barred under the applicable six-year statute of limitations to the extent it is based on conduct that occurred before October 25, 2015, and more generally argues it fails because Fan fails to allege "prostitution," which must mean sex in exchange for "currency or money[.]" (ECF No. 165 at 4-9.) Fan does not specifically respond to Jiang's statute of limitations argument as to this claim, but counters that a commercial sex act under NRS § 201.300 includes sex in exchange for anything of value. (ECF No. 182 at 7-8, 9-10.) The Court agrees with Jiang on his statute of limitation argument, but not his broader argument about the statutory meaning of the term prostitution.

Fan's sex trafficking claim under NRS § 201.300 is subject to a six year statute of limitations. *See* NRS § 171.085(3). It is accordingly barred to the extent it is based on conduct that occurred before October 25, 2015. This finding, in turn, means that Fan's sex trafficking claim under NRS § 201.300 is not plausibly alleged because it appears primarily based on the allegation that, "Jiang knowingly recruited Fan from China to Reno, Nevada in the United States in the name of study at UNR." (ECF No. 1 at 13.) Other allegations in the Complaint state that this happened in 2006. (*Id.* at 1-6.) This claim is accordingly time barred.

---

[5]The Court mentions this because Fan argues about her federal sex trafficking claim in response to the Motion. (ECF No. 184 at 7.) As noted, the Ninth Circuit affirmed dismissal of this claim. (ECF No. 125 at 2-4.)

However, yet more allegations in the Complaint suggest to the Court that this claim could be amended, so the Court will grant Fan leave to amend this claim as well. Specifically, Fan generally alleges that Jiang forced Fan to engage in numerous commercial sex acts (*id.* at 13), and otherwise alleges that their abusive sexual relationship resumed during the 2015-2020 time period, which would mostly not be time barred (*id.* at 2, 7). Thus, Fan amend this claim to the extent it is based on conduct that occurred on October 25, 2015, or later.

As mentioned, however, the Court is unpersuaded by Jiang's broader argument that Fan fails to allege "prostitution" under NRS § 201.300 because she fails to allege Jiang paid her money for sex. (ECF No. 165 at 5-9.) The plain language of the statute is inconsistent with Jiang's argument, defining prostitution as "engaging in sexual conduct with another person in return for a fee, monetary consideration or other thing of value." NRS § 201.295(5). Construing Fan's Complaint in the light most favorable to her, *see Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (instructing the Court to view it this way when evaluating the Motion), her allegations pertinent to the 2015-20 time period that she had sex with Jiang because he exerted influence over the committee that would decide whether to grant her tenure and "brainwash[ed] Fan that it was Jiang who made Fan hired by UNR" could be other things of value. (ECF No. 1 at 7.) Said otherwise, both a job and a tenured job more specifically are things of value. And Jiang proffers no binding precedent supporting the implausibly restrictive view of NRS § 201.295(5) he presents in his Motion. The Court accordingly rejects Jiang's broader argument as unpersuasive.[6]

///

---

[6]Fan makes an additional argument in response to the Motion based on the proposition that NRS § 201.300 "mirrors the federal TVPRA." (ECF No. 84 at 7-8.) Fan supports this proposition with a citation to a case that Jiang describes as 'fabricated or hallucinated' in reply. (ECF No. 185 at 5-6.) The Court was not able to locate *State v. Nelson*, 357 P.3d 420, 423 (Nev. 2015), either. Jiang accordingly appears correct that this citation may be 'fabricated or hallucinated.' Rule 11 applies to pro se litigants like Fan, exposing her to the risk of sanctions if she makes legal contentions unwarranted by existing law. *See Warren v. Guelker*, 29 F.3d 1386, 1388-90 (9th Cir. 1994). The Court accordingly cautions Fan against relying on cases whose existence the Court is unable to verify, regardless of the means Fan may be using to assist her with legal research.

### 3. Involuntary Servitude

Jiang next argues that Fan's involuntary servitude claim under NRS § 200.463 is time barred under the applicable three year statute of limitations to the extent it is based on any conduct predating October 25, 2018, including allegations related to babysitting, grip fabricating, or forced sex before that date. (ECF No. 165 at 9-10.) Fan does not specifically respond to the statute of limitations portion of this argument but does state that "[i]nvoluntary servitude under NRS 200.463 is not limited to physical restraint or confinement." (ECF No. 182 at 8.) In part because Fan's responsive argument is beside the point, the Court agrees with Jiang.

Involuntary servitude under NRS § 200.463 is a category B felony. *See id.* However, a victim of it may bring a civil action against the person who trafficked them. *See* NRS § 41.1399(10)(a). Civil claims for involuntary servitude, like Fan's here, are subject to a three year statute of limitations. *See* NRS § 171.085(4.) Fan's involuntary servitude claim under NRS § 200.463 is therefore time-barred to the extent it is based on conduct that occurred before October 25, 2018.

As currently alleged, Fan's claim relies on time-barred conduct including babysitting. (ECF No. 1 at 14.) The Court thus dismisses it without prejudice. However, like the Court is doing with her other claims, the Court grants Fan leave to amend her involuntary servitude claim so that it is based only on conduct that occurred on October 25, 2018, or later.

### 4. Intentional Infliction of Emotional Distress

Jiang further argues that Fan's intentional infliction of emotional distress ("IIED") claim is time barred to the extent it is based on conduct occurring before October 25, 2019, and otherwise argues Fan's IIED claim is barred by the litigation privilege to the extent it is based on Jiang sending a cease-and-desist letter and later applying for a protective order against Fan. (ECF No. 165 at 11-12.) Fan does not specifically respond to the statute of limitations portion of Jiang's argument, but generally argues an IIED claim may be based on "nonphysical exploitation of vulnerable individuals through manipulation

7

1  and deception" (ECF No. 182 at 7), and otherwise opposes application of the litigation
2  privilege (*id.* at 11-12). The Court agrees with both of Jiang's arguments.

3  In Nevada, IIED claims must be brought within two years. *See* NRS § 11.190(4)(e);
4  *see also Mwithiga v. Pierce*, 758 F. Supp. 3d 1230, 1241 (D. Nev. 2024), *appeal*
5  *dismissed*, No. 25-240, 2025 WL 1119677 (9th Cir. Jan. 24, 2025) (asserting that NRS §
6  11.190(4)(e) provides the applicable two year statute of limitations for IIED claims in
7  Nevada). The Court accordingly agrees with Jiang that Fan's IIED claim is time-barred to
8  the extent is based on conduct that occurred before October 25, 2019.

9  As she characterizes it in her Complaint, Fan's IIED claim is based on "many
10  violent rapes and threats to keep everything secret[.]" (ECF No. 1 at 15.) Such conduct
11  could conceivably result in severe emotional distress. However, Jiang is correct (ECF No.
12  165 at 11) that the IIED section of Fan's Complaint incorporates by reference the
13  preceding paragraphs of Fan's Complaint (ECF No. 1 at 15), and many of the factual
14  allegations regarding Jiang's conduct towards Fan after October 25, 2019, describe Jiang
15  sending Fan a cease-and-desist letter, and later applying for a Protection Order against
16  Fan (*id.* at 8-10). It is otherwise unclear from the allegations in the Complaint detailing
17  this time whether Fan and Jiang's allegedly abusive sexual relationship continued after
18  October 25, 2019. (*Id.*)

19  To the extent Jiang sending the cease-and-desist letter and applying for the
20  Protection Order against Fan forms the factual basis for Fan's IIED claim, it is barred by
21  the litigation privilege. The litigation privilege applies to "communications preliminary to a
22  proposed judicial proceeding." *Williams v. Lazer*, 495 P.3d 93, 100 (Nev. 2021) (citations
23  omitted). A cease and desist letter and an application for a Protection Order are
24  preliminary to proposed judicial proceedings—and the litigation privilege thus applies to
25  claims based on sending one, or applying for one. *See Scoyni v. Salvador*, No. 20-35123,
26  2021 WL 5002213, at *1 (9th Cir. Oct. 28, 2021) (finding the litigation privilege barred
27  claims based on the sending of a "cease and desist letter"); *Weiser L. Firm PC v. Hartleib*,
28  No. 23-55693, 2024 WL 4987351, at *2 (9th Cir. Dec. 5, 2024) (finding the litigation

privilege barred claims based on challenges to a "protective order"). And contrary to Fan's argument in response to the Motion (ECF No. 182 at 11-12), the litigation privilege applies even to documents and communications that the author or speaker knows to be false. *See Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502 (Nev. 2009). The Court accordingly finds that Fan's IIED claim against Jiang is barred by the litigation privilege to the extent it is based on Jiang sending Fan a cease-and-desist letter or applying for a Protection Order against her.

However, as noted, Fan's IIED claim against Jiang is based on "many violent rapes and threats to keep everything secret[.]" (ECF No. 1 at 15.) To the extent that these violent rapes and threats continued after October 25, 2019, Fan's IIED claim is not barred. Jiang's Motion is correspondingly denied in part. However, Fan may also amend this claim if she chooses to file an amended complaint to reflect the Court's rulings above that her IIED claim must be based on conduct that occurred on October 25, 2019, or later, and may not be based on Jiang sending a cease-and-desist letter or applying for a Protection Order.

### 5. Defamation

Like Fan's IIED claim, Jiang argues her defamation claim is time barred to the extent it is based on conduct that occurred before October 25, 2019, and is barred by the litigation privilege to the extent it is based on Jiang sending a cease-and-desist letter or applying for a Protection Order. (ECF No. 165 at 12.) For the reasons the Court provided above as to Fan's IIED claim, the Court agrees with Jiang. Defamation claims are also subject to a two year statute of limitations in Nevada. *See* NRS § 11.190(4)(c). And the litigation privilege bars defamation claims when it applies to them. *See Clark Cnty. Sch. Dist.*, 213 P.3d at 502. Thus, Fan's defamation claim is barred to the extent it is based on conduct that occurred before October 25, 2019, or based on Jiang sending a cease-and-desist letter or applying for a Protection Order.

However, Fan's defamation claim does not appear to be primarily based on Jiang sending a cease-and-desist letter or applying for a Protection Order. It instead appears

based on Jiang spreading "false and defamatory statements about Fan at workplace" beginning in August 2020. (ECF No. 1 at 10; *see also id.* at 15 ("The defamatory statements were statements indicating that Fan committed crimes and was proactively engaging in sexual misconduct, which are incompatible with Fan's profession.").) Jiang's Motion is not directed at this conduct during this time, and, for clarity, Jiang's Motion is denied to the extent it seeks complete dismissal of Fan's defamation claim. Fan may proceed on her defamation claim to the extent it is based on Jiang making statements to Fan's coworkers starting in August 2020.

That said, like the Court has done with Fan's other claims, the Court grants Fan leave to amend her defamation claim to the extent she wishes to make it more clearly compliant with this portion of this order, or to elaborate on Jiang's allegedly defamatory conduct starting in August 2020 that is not barred by the litigation privilege.

If Fan chooses to file an amended complaint consistent with this order, she must file it within 30 days. If Fan does not file an amended complaint, she will be proceeding only on her IIED and defamation claims to the extent those claims are based on conduct that occurred on October 25, 2019, or later, and to the extent they are not based on Jiang sending a cease-and-desist letter or applying for a Protection Order against Fan. The Court encourages Fan to carefully review this order if she chooses to prepare an amended complaint.

The Court further cautions Fan that she will waive her ability to file an amended complaint if she does not file one within 30 days.

## B.     Fan's Pending Objections to Judge Denney's Orders

The Court now turns to Fan's pending objections to some of Judge Denney's orders. Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary

to law."). "This subsection . . . also enable[s] the court to delegate some of the more administrative functions to a magistrate, such as . . . assistance in the preparation of plans to achieve prompt disposition of cases in the court." *Gomez v. United States*, 490 U.S. 858, 869 (1989) (citation omitted). A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993). A magistrate judge's pretrial order issued under 28 U.S.C. § 636(b)(1)(A) is not subject to de novo review, and the reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citation omitted).

The Court addresses each of Fan's pending objections under this standard in turn, below.

### 1.   ECF No. 187

Fan objects to two of Judge Denney's orders in this objection, so the Court will address Fan's objection one order at a time.

Fan first objects to an order where Judge Denney granted her an extension of time to respond to the Motion (ECF No. 181) because he did not discuss in it how Fan had filed a motion to extend her time to respond to the motion, how Jiang had opposed it, and because Judge Denney ignored the motion practice regarding Fan's requested extension of her time to respond in noting that Jiang later filed a notice of non-opposition to the Motion. (ECF No. 187 at 2.) Fan basically accuses Judge Denney of being biased towards Jiang. (*Id.*)

However, Judge Denney did not clearly err in granting Fan an extension of time to respond to the Motion, even though he did not discuss Fan's attempt over Jiang's opposition to get her deadline extended. Indeed, Judge Denney ultimately gave Fan a longer extension of time than she asked for. (*Compare* ECF No. 172 (requesting an extension to April 14, 2025) *with* ECF No. 181 (granting Fan an extension until April 25,

2025).) And if Judge Denney had simply granted Fan's motion for extension of time, Fan's response to the Motion would have been untimely because she did not file it until April 22, 2025. (*Compare* ECF No. 172 (requesting an extension to April 14, 2025) *with* ECF No. 182 (filed April 22, 2025).) But what matters is that Judge Denney gave Fan an opportunity to substantively respond to the Motion because public policy favors the disposition of cases on their merits. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors disposition of cases on the merits."). And, as noted above in the portion of this order addressing the Motion, the Court considered Fan's response to the Motion in ruling on it. Fan was accordingly not prejudiced by the fact that Judge Denney did not discuss her motion for an extension of time and the dispute about it when he granted her a longer extension of time then she asked for to respond to the Motion.

Fan next objects to an order (ECF No. 184) in which Judge Denney cautioned her to file motions when she seeks court intervention instead of notices—under the Federal and Local Rules—and to comply with his discovery dispute process outlined in his standing order. (ECF No. 187 at 2-4.) Fan suggests that this order deprives her of due process and that Judge Denney is partial to Jiang. (*Id.*) The Court is unpersuaded.

Judge Denney did not clearly err in cautioning Fan to file motions instead of notices and comply with his practices for resolving discovery disputes to the extent a discovery dispute had arisen. (ECF No. 184.) Judge Denney accurately summarized the applicable Local Rules and discovery dispute resolution procedures in his order. (*Id.*) Moreover, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). And "[a]s a general matter, magistrate judges resolve discovery disputes and other non-dispositive pretrial matters, while district judges resolve dispositive motions and preside over trial." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 512 (D. Nev. 2020) (citing Fed. R. Civ. P. 72). Judge Denney's challenged order is consistent with these principles. The Court overrules Fan's objection to it.

///

Fan also argues cumulative error and requests specific relief because of it. (ECF No. 187 at 4-5.) But because the Court does not find that Judge Denney erred in either of the challenged orders (ECF Nos. 181, 184), the Court does not find that Judge Denney cumulatively erred, either. Fan's objection (ECF No. 187) is overruled.

### 2. ECF No. 195

Fan next objects to Judge Denney's order (ECF No. 186) denying her motion to stay discovery pending resolution of Jiang's Motion. (ECF No. 195.) In his order, Judge Denney first explained that he already took Fan's pro se status into account when he reopened discovery and set the discovery period for 120 days. (ECF No. 186 at 1.) Because one of the reasons Fan offered in support of her motion to stay discovery was that she needed time to respond to the Motion, Judge Denney then noted that portion of her request was moot since she had already responded to it. (*Id.*) Judge Denney next observed that Fan had filed several other motions "instead of focusing her time and resources on discovery since February 11." (*Id.* at 2.) Judge Denney proceeded to analyze Fan's motion to stay discovery using the three factors described in *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013), primarily reasoning both that the Motion only sought partial judgment on the pleadings, so would not be dispositive of Fan's claims, and that it was essentially unfair for Fan to delay this case, "because of her focus on motions practice instead of discovery." (ECF No. 186 at 2-3.) He accordingly decided to deny Fan's motion to stay discovery. (*Id.* at 3.)

In her objection, Fan initially argues that Judge Denney did not correctly apply the standard from *Kor Media* but spends much of it arguing that it was unfair of Judge Denney to characterize her as having pursued motion practice instead of discovery, because she is pro se and thus faces structural disadvantages Jiang does not because he is represented by counsel. (ECF No. 187.) However, Fan glosses over that Judge Denney did analyze each of the three factors laid out in *Kor Media*. (ECF No. 186 at 2-3.) And notably, Fan does not focus in her objection on the other main reason that led Judge Denney to deny her motion to stay discovery—that the Motion was not dispositive.

1  (*Compare* ECF No. 187 *with* ECF No. 186 at 2-3.) Having analyzed the Motion above, the Court can—and does—confirm that Judge Denney was correct. The Motion is not fully dispositive of Fan's claims against Jiang. Like Judge Denney found, that factor accordingly weighed in favor of denying her Motion. And for this reason, Judge Denney did not clearly err in declining to stay discovery.

Even focusing on the other reason Fan focuses on in her objection—that she 'chose' to file motions instead of conducting discovery—the Court cannot say Judge Denney clearly erred. Indeed, Fan implicitly acknowledges that Judge Denney did not clearly err in writing, "[p]rocedural filings are not mutually exclusive with discovery efforts." (ECF No. 195 at 4.) That is essentially what he suggested she should have done in offering one justification for his order: that he adopted a new schedule for discovery cognizant of her pro se status, and she thus should have been able to both draft motions and conduct discovery in the time he gave her. (ECF No. 186 at 2-3.) Expecting her to do both, as she seems to acknowledge she should be able to in her objection, did not infect Judge Denney's order with clear error. The Court overrules Fan's objection. (ECF No. 195.)

### 3.     ECF No. 200

Fan next objects to one of Judge Denney's orders in which he denied several motions she filed regarding disputes with her former counsel in this case. (ECF No. 188.) The gist of Judge Denney's challenged order is that he declined to get involved in disputes between Fan and her former counsel, Ryan Cann. (*Id.*)

However, Judge Denney offered more specific reasoning for his denial of each of the motions he denied in that order. Judge Denney first denied Fan's motion essentially asking that Cann be required to pay all the monetary sanctions Judge Jones ordered Fan and Cann to pay jointly following his dismissal of Fan's claims against Wu. (*Id.* at 1-2.) Judge Denney noted that Judge Jones specified in his order that Fan and Cann were jointly responsible for the sanctions award, and Fan did not timely appeal or seek

1 reconsideration of that award. (*Id.*) Judge Denney stated in closing that he was not going
2 to get involved in any further disputes between Fan and Cann. (*Id.* at 2.)

3 Judge Denney next denied two motions Fan filed focused primarily on getting Cann
4 to return his case file to Fan as moot because Cann stated in a written filing that he gave
5 it back to her. (*Id.*) Judge Denney then explained that Fan should raise any further
6 disputes about Cann with the state bar and asserted that he lacked jurisdiction over Cann
7 since he had already granted Cann's motion to withdraw as counsel. (*Id.*) Judge Denney
8 finally denied a motion Fan filed seeking to strike a response that Cann filed captioned
9 with his own name instead of as Fan's lawyer in apparent response to another motion
10 Fan filed asking him to do so. (*Id.* at 3; *see also* ECF Nos. 143, 150, 155, 160.)

11 Fan's primary arguments in her objection to this order resolving several motions
12 are displeasure Judge Denney declined to adjudicate her disputes with her former
13 counsel, arguments to the effect that he did not offer enough analysis in his order denying
14 her motions, and arguments to the effect that he violated her due process rights in issuing
15 his order. (ECF No. 200.) Fan goes so far as to say that Judge Denney, "abandoned the
16 judicial function altogether." (*Id.* at 2.)

17 The Court understands that Fan is upset with her prior counsel and finds it
18 reasonable that Fan would not want to be responsible for approximately 80 thousand
19 dollars in sanctions, but does not find that Judge Denney clearly erred in the decisions
20 making up the challenged order.

21 As to the first portion of the challenged order, Judge Denney is correct that Judge
22 Jones concluded his March 20, 2024, order with the sentence, "Defendant Wu is entitled
23 to $84,462.21 in attorney's fees and costs against both Plaintiff Fan and her counsel."
24 (ECF No. 122 at 12.) Judge Denney is also correct that there is no record on the docket
25 that Fan either sought reconsideration or appealed that order. Moreover, while the Ninth
26 Circuit found that it lacked jurisdiction over the sanctions award Judge Jones ultimately
27 issued because Judge Jones had not determined a specific amount at the time of her
28 appeal (ECF No. 125 at 2), the Ninth Circuit affirmed Judge Jones' dismissal of Fan's

claims against Wu, finding they "failed as a matter of law" (*id.* at 4-5). The Ninth Circuit accordingly affirmed the necessary predicate to Judge Jones' finding that Fan's claims against Wu were frivolous leading to the sanctions award—in that it affirmed dismissal of the claims. (*Id.*)

Fan also does not dispute that neither she nor her counsel sought reconsideration of, or appealed, this fee award—or that Judge Jones found them jointly and severally liable in the order. (ECF No. 200.) Judge Denney's decision to stay out of any further dispute between Fan and Cann about who will pay the award thus appears to rest on a solid legal foundation. And while Fan argues that Judge Denney did not explicitly discuss Fed. R. Civ. P. 60 in his analysis, or address Fan's objection to the fact that Jiang filed a response to the motion, the Court does not find that these arguments evidence error. (*Id.* at 3.) Judge Denney did not need to explicitly discuss Fed. R. Civ. P. 60 in his analysis to draw the reasonable conclusion that the time to appeal has elapsed. And the peripheral dispute of whether Jiang may weigh in on the motion was immaterial to resolving the motion as well, so Judge Denney did not clearly err in declining to address it. In sum, Judge Denney did not clearly err in declining to allocate sole responsibility to Cann for the $84,462.21 in attorney's fees and costs awarded as a sanction against Fan and Cann.

Fan otherwise argues Judge Denney clearly erred in accepting Cann's representation that he had transmitted his case file to Fan, declining to sanction Cann in part because he had already granted Cann's motion to withdraw, and resolving Fan's motions regarding Cann filing several documents listing himself as Fan's counsel after he was permitted to withdraw. (ECF No. 200 at 4-6.) But Judge Denney had already granted Cann's motion to withdraw before all the briefing Fan raises in her objection occurred. (ECF No. 142 (granting motion to withdraw); ECF No. 200 at 4-6 (referencing ECF Nos. 157, 173, 150, 155, 162).) Cann's representation of Fan ended when Judge Denney granted his motion to withdraw. *See, e.g.*, *Cove/Mallard Coal. v. U.S. Forest Serv.*, 67 F. App'x 426, 428 n.3 (9th Cir. 2003). Judge Denney had no obligation and indeed no jurisdiction to resolve Fan's dispute with Cann from that point forward. Indeed, as Judge

Denney indicated, Fan's recourse is to pursue other remedies against Cann including before the sate bar, not to seek relief from the Court. (ECF No. 188 at 2.)

In sum, the Court overrules Fan's objection. (ECF No. 200.)

### 4.  ECF No. 224

Fan finally objects to two of Judge Denney's orders denying discovery motions filed by both sides primarily for failure to first comply with the meet-and-confer requirements embedded in the Court's Local Rules and Judge Denney's standing order, though also for other noncompliance with Federal and Local Rules. (ECF No. 224 (objecting to ECF Nos. 204, 205).) Judge Denney did not clearly err in these two orders. First, Judge Denney has broad discretion over pretrial discovery matters in this case. *See, e.g., Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078-79 (9th Cir. 2002). Second, the meet-and-confer requirement is of paramount importance in discovery matters. *See, e.g., Martinez v. James River Ins. Co.*, No. 219CV01646RFBNJK, 2020 WL 13533708 (D. Nev. Jan. 23, 2020) (explaining why the meet-and-confer requirement is important and enforcing it); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 (D. Nev. 2019) ("These meet-and-confer requirements are very important and the Court takes them very seriously."). Judge Denney did not clearly err in enforcing it against both sides. The Court overrules Fan's objection. (ECF No. 224.)

### III.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Jiang's motion for judgment on the pleadings (ECF No. 165) is granted, in part, and denied in part, as specified herein.

It is further ordered that, if Fan chooses to file an amended complaint consistent with this order, she must file it within 30 days.

///

It is further ordered that if Fan does not file an amended complaint within 30 days, she will waive her chance to file one, and she will be proceeding only on her IIED and defamation claims to the extent those claims are based on conduct that occurred on October 25, 2019, or later, and to the extent these two claims are not based on Jiang sending a cease-and-desist letter or applying for a Protection Order against Fan.

It is further ordered that Fan's several pending objections to pretrial orders issued by United States Magistrate Judge Craig S. Denney (ECF Nos. 187, 195, 200, 224) are overruled.

DATED THIS 23rd Day of June 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE